REVISED August 13, 2007

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 13, 2007**

Charles R. Fulbruge III
Clerk

No. 06-30159

LINDA L DOWNER; HUNT B DOWNER

              Plaintiffs - Appellees

v.

FRED SIEGEL, Etc; ET AL

              Defendants

FRED SIEGEL, also known as Michael Siegel, also known
as Michael Fred Siegel

              Defendant - Appellant

-------------------------

PATRICK B LANDRY; DOROTHY A LANDRY; LINDA L DOWNER;
HUNT B DOWNER

              Plaintiffs - Appellees

v.

MICHAEL F SIEGEL, Etc; ET AL

              Defendants

MICHAEL F SIEGEL, also known as Fred Siegel

              Defendant - Appellant

--------------------
Appeal from the United States District Court
for the Eastern District of Louisiana
--------------------

Before KING, WIENER, and OWEN, Circuit Judges.

KING, Circuit Judge:

    Defendant-appellant Michael F. Siegel appeals the district

court's order vacating an arbitration award in his favor.  We

REVERSE and REMAND for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dain Rauscher, Inc. ("DR") employed defendant-appellant Michael F. Siegel (also known as Fred Siegel) as a stock broker. In 1997, plaintiffs-appellees Linda and Hunt Downer (together, "the Downers") opened a brokerage account with DR and executed an asset management agreement, which stated "[t]he client understands, acknowledges and agrees that":

> (a) ALL CONTROVERSIES WHICH MAY ARISE BETWEEN THE CLIENT AND [RAUSCHER PIERCE REFSNES ("RPR")],[1] ITS OFFICERS, DIRECTORS, AGENTS, REPRESENTATIVES OR EMPLOYEES, PRESENT OR FORMER, CONCERNING ANY ACCOUNT MAINTAINED BY THE CLIENT WITH RPR, ANY TRANSACTION INVOLVING RPR AND THE CLIENT, REGARDLESS OF WHETHER SUCH TRANSACTION OCCURRED IN THE CHOICE ACCOUNT OR ANOTHER ACCOUNT, OR THE CONSTRUCTION, PERFORMANCE OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN THE CLIENT AND RPR, WHETHER ENTERED INTO PRIOR, ON, OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION TO THE FULL EXTENT PROVIDED BY LAW. ACCORDINGLY, BOTH RPR AND THE CLIENT ARE WAIVING THEIR RESPECTIVE RIGHTS TO SEEK REMEDIES IN COURT, INCLUDING, AMONG OTHER THINGS, THE RIGHT TO A JURY TRIAL.

Plaintiffs-appellees Patrick and Dorothy Landry (collectively, "the Landrys") signed an asset management agreement with an identical arbitration clause when they opened a brokerage account with DR in early 1998. Siegel, as an agent of DR, served as a stock broker for the Landrys and the Downers (collectively "the plaintiffs").

In November 1997, the Downers transferred $300,000 from

---

[1] DR is the successor-in-interest to RPR.

their DR account directly to an account of World Environmental Technologie ("WET"), allegedly at Siegel's suggestion. The Landrys also allege that they were persuaded by Siegel to invest $100,000 from their DR account in WET.

In 2002, unhappy with the failure of their WET investments, the Landrys and the Downers filed separate actions in Louisiana state court against multiple defendants including Siegel[2] alleging, among other things, fraud in the inducement of both the investments and account agreements and violations of the Securities Exchange Act of 1934 and NASDAQ rules of conduct. The defendants removed the actions to federal court. These cases were later consolidated. The plaintiffs filed additional related suits in state court, which were removed and consolidated with the lead case.

The defendants moved to stay the actions pending arbitration, but the Downers contested the arbitrability of the dispute. The district court stayed the actions pending arbitration and denied the Downers' motion concerning arbitrability. Throughout the next two years, the plaintiffs attempted numerous times, albeit unsuccessfully, to have the arbitration panel dismiss the arbitration proceeding and to otherwise have the district court lift its stay and return the case to the active docket.

Siegel initiated an arbitration, seeking a declaratory judgment that he was not liable to the plaintiffs. The plaintiffs filed a counterclaim against Siegel in the

_____

[2] Siegel is the only defendant involved in this appeal.

arbitration, alleging the same misconduct and requesting the same relief as they had in the district court action. The arbitration panel ultimately dismissed the plaintiffs' claims based on prescription.

On the plaintiffs' motion, the district court vacated the arbitration award, holding that (1) because the investments in WET were private investments between Siegel and the plaintiffs, they were not subject to the arbitration agreement and (2) given the repeated challenges to the arbitrability of the disputes at issue, the plaintiffs had not waived their right to challenge the arbitration. Siegel, who filed a motion to confirm the arbitration award, now appeals.

## II. DISCUSSION

We review the district court's decision to vacate an arbitration award under a de novo standard, deferring greatly to the arbitration panel's decision. Kergosien v. Ocean Energy, Inc., 390 F.3d 346, 352 (5th Cir. 2004). Pursuant to the Federal Arbitration Act ("FAA"), a district court's ability to set aside an arbitration award is limited to four grounds. 9 U.S.C. § 10(a). Only one of those grounds is applicable in this case, that is, whether the "arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Id. § 10(a)(4).

"'[A] district court's review of an arbitration award is extraordinarily narrow.'" Kergosien, 390 F.3d at 352 (quoting Prestige Ford v. Ford Dealer Computer Servs., Inc., 324 F.3d 391,

393 (5th Cir. 2003)) (brackets in original). A presumption of arbitrability exists which requires the court to decide in favor of arbitration when "the scope of an arbitration clause is fairly debatable or reasonably in doubt." Mar-Len of La., Inc. v. Parsons-Gilbane, 773 F.2d 633, 635 (5th Cir. 1985). "The weight of this presumption is heavy: arbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation that could cover the dispute at issue.'" Id. at 636 (quoting Wick v. Atl. Marine, Inc., 605 F.2d 166, 168 (5th Cir. 1979)).

A reasonable interpretation of the arbitration clause in the instant case supports a conclusion that the clause covers the dispute. Although the district court held that the plaintiffs' dispute is with Siegel in his individual capacity and is not subject to the arbitration clause in the agreement between the plaintiffs and DR, "[w]hether a claim is subject to arbitration depends on the contractual language." Deputy v. Lehman Bros., Inc., 345 F.3d 494, 513 (7th Cir. 2003). The text of the clause in the instant case does not limit the circumstances to which it applies to those that fall within the scope of the employee's employment. Rather, the arbitration clause provides:

> ALL CONTROVERSIES WHICH MAY ARISE BETWEEN THE CLIENT AND RPR, ITS OFFICERS, DIRECTORS, AGENTS, REPRESENTATIVES OR EMPLOYEES, PRESENT OR FORMER, CONCERNING ANY ACCOUNT MAINTAINED BY THE CLIENT WITH RPR . . . SHALL BE DETERMINED BY ARBITRATION.

The broad language of this clause covers all controversies between the plaintiffs and former or current employees of DR concerning any account the plaintiffs maintained at DR. Here,

because the WET investments were made from funds deposited in the plaintiffs' DR accounts, one reasonable interpretation of the clause is that these claims concerned the Downers' and the Landrys' accounts.  The plaintiffs cannot maintain their underlying action without discussing the asset management agreement and why Siegel was in charge of their money.  The presumption of arbitrability dictates that the court find in favor of arbitration because there is an interpretation of the clause which covers the claims in this case.  That there are other interpretations which could lead to a conclusion that the claims involve a private investment outside the scope of the arbitration clause does not require vacation of the arbitration award.  "[I]f there is ambiguity as to whether an arbitrator is acting within the scope of his authority, that ambiguity must be resolved in favor of the arbitrator."  Am. Eagle Airlines, Inc. v. Airline Pilots Ass'n, 343 F.3d 401, 405 (5th Cir. 2003). Accordingly, the arbitration panel did not exceed its powers, and the district court improperly vacated the arbitration award.

Our conclusion is consistent with decisions of other circuits that have found other fraud claims to be arbitrable under similar arbitration agreements.  For example, in Fazio v. Lehman Brothers, Inc., the plaintiffs' broker had misappropriated at least $54 million of his clients' money.  340 F.3d 386, 391 (6th Cir. 2003).  The plaintiffs sued the brokerage firms for which their broker had worked over the course of his career, and the defendants moved to stay the proceedings and compel arbitration based on an arbitration clause materially similar to

the one involved here.[3]  Id. at 391-92.  The Sixth Circuit,
disagreeing with the district court's determination that the
claims were outside the scope of the arbitration agreements, held
that the claims concerning the broker's fraudulent conduct were
within the scope of the arbitration agreement because "[t]he
lawsuit by necessity must describe why [the broker] was in
control of the plaintiffs' money . . . .  The plaintiffs
therefore cannot maintain their action without reference to the
account agreements, and accordingly, this action is covered by
the arbitration clauses."  Id. at 395.  On another claim for
fraudulent acts by the same broker involving the same arbitration
provision as in Fazio, the Seventh Circuit agreed that the
"claims clearly fell within the scope of this arbitration clause
because they all related to [the plaintiff's] 'accounts,
transactions or agreements.'"  Deputy, 345 F.3d at 513.

The plaintiffs assert that the contract should be
invalidated because of the alleged fraudulent inducement, in
essence arguing that there was never a binding contract because
they would not have entered into the transaction if they had not
been misled by Siegel.  This argument is beside the point.  Even
if this contract had been induced by fraud, the arbitration
clause is enforceable unless the plaintiffs were fraudulently

---

[3]  The arbitration clause at issue in Fazio, provided that
"[a]ny controversy arising out of or relating to any of my
accounts, to transactions with you for me, or to this or any
other agreement or the construction, performance or breach
thereof, shall be settled by arbitration."  340 F.3d at 392.

induced into agreeing to the arbitration clause itself.[4]  Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967).  The district court cannot consider general claims of fraud in the inducement of the contract.  Id.  The plaintiffs' fraud argument focuses on the nature of the WET investment.  At no point do the plaintiffs' fraudulent inducement claims focus on the arbitration clause itself.  Accordingly, the plaintiffs' argument that the contract should be vitiated on fraudulent inducement grounds also fails.[5]

### III.  CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, and this case is REMANDED for confirmation of the arbitration award.

---

[4]  In Prima Paint Corp. v. Flood & Conklin Mfg. Co., the Supreme Court stated that:

> [I]f the claim is fraud in the inducement of the arbitration clause itself——an issue which goes to the 'making' of the agreement to arbitrate——the federal court may proceed to adjudicate it.  But the [Federal Arbitration Act's] statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally.

388 U.S. 395, 403-04 (1967).

[5]  Siegel also argues that the plaintiffs waived their right to contest the arbitrability of the claims.  We decline to reach the waiver issue because even if, as the plaintiffs argue, they did not waive that objection, the claims are subject to the arbitration clause.