985 So.2d 731 (2008)
NCO PORTFOLIO MANAGEMENT INC.
v.
Bertram GOUGISHA.
FIA Card Services, N.A.
v.
Dorothy E. Chouest.
MBNA America Bank N.A.
v.
Nicole E. Burdett.
Nos. 07-CA-604, 07-CA-882, 07-CA-884.
Court of Appeal of Louisiana, Fifth Circuit.
April 29, 2008.
*732 Gregory M. Eaton, Linda L. Lynch, Baton Rouge, LA, for NCO Portfolio Management and MBNA America Bank, N.A. and FIA Card Services, N.A.
William J. Luscy, III, Metairie, LA, for Dorothy E. Chouest.
William G. Cherbonnier, Jr., Gretna, LA, Steve R. Conley, Covington, LA, Garth J. Ridge, Baton Rouge, LA, for Bertram Gougisha, Dorothy E. Chouest and Nichole Burdett.
Michael G. Gaffney, New Orleans, LA, for Nichole Burdett.
David L. Koen, Marisa C. Katz, New Orleans, LA, David A. Szwak, Shreveport, LA, for Amicus Curiae, National Association of Consumer Advocates.
Bruce C. Dean, Metairie, LA, Soren E. Gisleson, New Orleans, LA, Allan Kanner, New Orleans, LA, for Amicus Curiae, The Louisiana Association for Justice.
Panel composed of Judges EDWARD A. DUFRESNE, JR., THOMAS F. DALEY, MARION F. EDWARDS, SUSAN M. CHEHARDY, CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, FREDERICKA HOMBERG WICKER, and GREG G. GUIDRY.

ON REHEARING
THOMAS F. DALEY, Judge.
These consolidated cases involve the request for confirmation of an arbitration award in favor of the credit card company or its assignee and against the alleged debtor. For the reasons that follow, we decline to confirm the awards.

FACTS AND PROCEDURAL HISTORY:
In Case No. 07-CA-604, NCO Portfolio Management, Inc., (hereinafter NCO) filed a Petition to Confirm an Arbitration Award for a credit card debt allegedly owned by defendant, Bertram Gougisha. Gougisha filed for an Extension of Time to answer, but failed to respond within the time allotted. NCO obtained a default judgment confirming the award. This Court affirmed that judgment on appeal. This Court then granted Gougisha's Motion for Rehearing and consolidated this case with two similar cases, Case Nos. 07-CA-882 and 07-CA-884.
In Case No. 07-CA-882, FIA Card Services, N.A., (hereinafter FIA), filed a Petition to Confirm an Arbitration Award against Dorothy Chouest stating that arbitration was conducted pursuant to a contractual agreement between the parties. Chouest denied all allegations in the petition. FIA then filed a Motion to Confirm the Award. At the hearing on the motion, counsel for FIA requested the court confirm the award, arguing the time limit for vacating or modifying the award had passed and the trial court was compelled by statute to confirm the award. The trial judge disagreed and denied the confirmation. FIA appealed.
In Case No. 07-CA-884, MBNA America Bank, N.A. (hereinafter MBNA) filed a Petition to Confirm an Arbitration Award against Nicole Burdett. The petition alleged *733 the MBNA had issued a credit card to Burdett and an arbitration proceeding was conducted, which resulted in an award being issued against Burdett. Burdett denied the allegations in the petition and denied the requests for admissions stating she did not receive notice of the arbitration proceeding and did not know if the credit card agreement authorized arbitration. MBNA then filed a Motion to Confirm Arbitration Award. Defendant filed an opposition to the motion claiming: (1) the arbitration proceeding was held in Maryland and defendant had not waived jurisdiction, (2) the claim was prescribed, and (3) the motion to confirm was filed more than one year after the award was entered and thus violates the time period set forth in R.S. 9:4209. The trial court denied confirmation of the award[1].
Finding the issues presented in these cases to be res nova in Louisiana, this Court consolidated the appeals for en banc consideration.

LAW AND DISCUSSION:
The underlying arbitration awards in these proceedings originate from purported credit card accounts and as such, involve interstate commerce. Accordingly, the Federal Arbitration Act (hereinafter FAA), 9 U.S.C. § 1, et seq. applies. The FAA provides that one may compel another to participate in arbitration and to enforce the results based on the contract to arbitrate stating:
A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
9 U.S.C. § 2
In interpreting the FAA, the United States Supreme Court has held that a party cannot be compelled to submit a dispute to arbitration if he has not agreed to do so. AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The court explained: "The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede judicial determination that the [contract] does in fact create such a duty." Id. at 649, 106 S.Ct. at 1419, quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546-547, 84 S.Ct. 909, 912-913, 11 L.Ed.2d 898 (1964).
The FAA further provides that a party seeking to compel arbitration or to confirm an arbitration award must present proof that a valid contract to arbitrate exists and must file a copy of the contract stating in pertinent part:
If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall *734 specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title ...
9 U.S.C. § 9
The party moving for an order confirming, modifying, or correcting an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk:
(a) The agreement ...
9 U.S.C. § 13
In adjudicating a Motion to Compel Arbitration the court must first determine whether there is a valid agreement to arbitrate. Bank One, N.A. v. Coates, 125 F.Supp.2d 819 (S.D.Miss.2001), aff'd 34 Fed.Appx. 964 (5th Cir.2002). While we recognize there is a federal policy favoring arbitration, a court must independently determine whether there is a valid agreement to arbitration. Bank of America, N.A. (USA) v. Dahlquist, 2007 MT 32, 336 Mont. 50, 152 P.3d 718 (2/7/07). The policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate. Fleetwood Enterprises, Inc. v. Gaskamp, 280 F.3d 1069 (5th Cir.2002). To determine whether a valid agreement to arbitrate exists, courts should apply state principles that govern the formation of contracts. Webb v. Investacorp, Inc. 89 F.3d 252 (5th Cir. 1996). The United States Supreme Court has made it clear that in written arbitration agreements involving interstate commerce, the substantive provisions of the FAA preempt state law. Collins v. Prudential Ins. Co. of America, 99-1423 (La.1/19/00), 752 So.2d 825. Accordingly, while the FAA preempts state law in arbitration agreements involving interstate commerce, states retain the ability to regulate contracts involving arbitration agreements and may do so under general contract law. Allied-Bruce Terminix Co., Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). Thus, a state court may invalidate an arbitration agreement using any grounds that could be used to invalidate a contract. Id. Louisiana law provides that consent is required to perfect a contract. C.C. art.1927.
The argument raised by the creditors in these consolidated cases is that the credit card customer or debtor is barred from raising a defense to the arbitration award because the debtors did not take action within 90 days of the underlying arbitration award as provided in 9 U.S.C. § 10-13.
We disagree and hold that the validity of the underlying arbitration award rests on whether there is a valid arbitration agreement and the time limit imposed in the FAA for the debtor to modify the arbitration award does not come into play unless there is a valid written agreement to arbitrate. In MCI Telecommunications Corp. v. Exalon Industries, Inc., 138 F.3d 426 (1st Cir.1998), the court held that evidence of the existence of a valid contract to arbitrate is required on a Motion to Confirm an Arbitration Award regardless of the time limit imposed by 9 U.S.C. § 12. The MCI court specifically found that there was "no indication that Congress intended for a party to be found to have waived the argument that there was no written agreement to arbitrate if that party failed to raise the argument within the time period established by section 12." Id at 430. This reasoning has been followed by the Supreme Courts in other states. Danner v. MBNA America Bank, N.A. 06-1429 (4/26/07), 369 Ark. 435, 255 S.W.3d *735 863; Bank of America, N.A. (USA) v. Dahlquist, supra; MBNA America Bank, N.A. v. Credit, 281 Kan. 655, 132 P.3d 898 (Kan.2006).
In Aguillard v. Auctions Management Corp., 04-2804 (La.6/29/05), 908 So.2d 1, the Louisiana Supreme Court directly addressed the applicability of an arbitration clause which was contained in a printed form prepared by a party with superior bargaining power. The Court recognized that state courts review and "regulate contracts involving arbitration agreements under general contract law to determine if the arbitration agreement is invalid and unenforceable as a contract of adhesion." Id. at p. 8, 908 So.2d at 8. Quoting from Professor Saul Litvinoff's law review article entitled "Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations", 47 La. L.Rev. 699, 757-59 (1986-1987), the Court acknowledged:
Contracts of adhesion are usually contained in standard forms, which is justified by the volume of business transacted by those concerns of the kind referred above. Some clauses printed in those forms, occasionally in small print, may present difficulties of interpretation concerning the advantages allowed to the party in the stronger position. That is actually a problem of acceptance, as the real question is whether the other party truly consented to the printed terms.
The Aguillard Court went on to state the "standard form[s] serves merely as a possible indicator of adhesion" and the issue to be decided is "one of consent," explaining:
Consent is called into question by the standard form, small print, and most especially the disadvantageous position of the accepting party, which is further emphasized by the potentially unequal bargaining positions of the parties.
The Aguillard Court addressed a split in the Courts of Appeal regarding "adhesion analysis to determine the enforceability and validity of an arbitration agreement." Aguillard, supra, p. 12, 908 So.2d at 11. Relying primarily on the fact that Mr. Aguillard signed a two page document that contained an arbitration provision, the Court found nothing in the contract document that "would call into question the validity of plaintiff's consent to the terms of the agreement as indicated by his signature". Id. p. 24, 908 So.2d at 18. Unlike the facts in Aguillard, in the cases before us, no evidence of notice or consent to the arbitration agreement was provided by any of the creditor/plaintiffs regarding any of the alleged debtor/defendants.
The creditor/plaintiffs in these cases argue that the state courts are prohibited from reviewing the threshold question of whether a binding arbitration agreement exists because the arbitrator has already made that determination and courts are prohibited from reviewing the merits of an arbitration award. We consider the question of the existence of a binding arbitration agreement to be independently reviewable by the courts. Since binding arbitration is imposed contractually, in order to confirm an arbitration award a party must prove that the procedure has been agreed to by the parties.
We analogize the position of the plaintiffs in these cases to that of a party seeking to make a foreign judgment executory. In that procedural posture, the judgment debtor does not have the right to attack the merits of the judgment; however, the judgment debtor does not lose the right to contest the foreign court's lack of jurisdiction. Lepard v. Lepard, 31,351 (La.App. 2 Cir. 12/9/98), 722 So.2d 367. Similarly, in an arbitration proceeding, the *736 arbitrator only has the power to resolve a dispute if there is a valid arbitration agreement. Absent a valid arbitration agreement, the arbitrator lacks jurisdiction over the dispute and the alleged debtor. In these consolidated cases, this Court does not purport to have the authority to review the merits of these arbitration awards, i.e., whether the debt was owed, the amount of the debt, and other such issues related to the merits of the award. Rather, the only inquiry made by this Court, under the instruction provided by Aguillard, is whether a valid arbitration agreement exists.
The creditor/plaintiffs have further argued that the case of Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) prohibits this Court from reviewing the validity of the arbitration agreement. We disagree and find that the ruling in Buckeye actually supports this Court's ability to review the validity of the arbitration agreement. The Buckeye court found that contract validity is considered by the arbitrator in the first instance, "unless the challenge is to the arbitration clause itself." Id. at 446, 126 S.Ct. 1209. Since the alleged debtors in these cases are contesting the validity of the arbitration clause itself, we find that this Court has the authority and a duty to determine whether an arbitration agreement exist between the creditors[2] and alleged debtors in this case. Accordingly, the arbitrator's finding that there was a valid arbitration agreement is not binding on the trial court given the facts of this case.
We find the creditor/plaintiffs must prove with competent evidence that a valid arbitration agreement exists as to each of the alleged debtors against whom they seek to confirm these arbitration awards. In support of their position that there is a valid agreement to arbitrate, the creditors submitted the same evidence in all cases. This evidence consists of:[3]
(1) A facsimile of the purported current terms of the current lending agreement as presented to the credit customer and reflected in the records of the creditor, entitled "credit card agreement". We are unable to determine the date of this document. It does not contain an arbitration agreement.
(2) A barely legible copy of a document entitled "credit card agreement additional terms and conditions". This document, which was revised April 2001, contains an arbitration clause.
(3) A barely legible copy of a document entitled "Important Amendments to your Credit Card Agreement". This document, dated 1999, contains an arbitration clause.
The alleged debtors' names or signatures do not appear anywhere on these documents, nor were any supporting documents introduced to show a relationship between these alleged debtor/defendants and these creditor/plaintiffs.
We find that the creditors, plaintiffs herein, have failed to adequately prove the existence of a binding agreement to arbitrate. Simply supplying the trial court *737 with a difficult to read, and in some cases illegible, form that purports to evidence an agreement to arbitrate with no supporting evidence is insufficient. No evidence was provided to the court that linked the arbitration terms included in the supplemental terms and conditions to these credit card holders. No evidence that the credit card holders were put on notice of and agreed to the arbitration agreement was provided; absent some proof that the credit card holder was made aware and acquiesced to the arbitration clause, there is no proof that an agreement exists. We reject the argument of NCO, FIA, and MBNA that the simple use of a credit card binds a credit card holder to all terms and conditions that the issuer wishes to unilaterally impose without some proof of notice and consent.

CONCLUSION:
For the foregoing reasons, the trial court judgment in Case No. 07-CA-604 is hereby vacated because there was insufficient proof to establish a prima facie showing on default. Accordingly, this case is remanded to the trial court for further proceedings. The trial court judgments in Case Nos. 07-CA-882 and 07-CA-884 denying the creditors' Motions to Confirm Arbitration are affirmed.
07-CA-604 ON REHEARING, PRIOR OPINION OF THIS COURT REVERSED; TRIAL COURT JUDGMENT VACATED.
07-CA-882 TRIAL COURT JUDGMENT AFFIRMED.
07-CA-884 TRIAL COURT JUDGMENT AFFIRMED.
ROTHSCHILD, J., dissents.
GUIDRY, J., dissents for reasons assigned by ROTHSCHILD, J.
ROTHSCHILD, J., Dissenting.
As I disagree with the opinion of the majority, I must respectfully dissent. Each of these consolidated cases involves an attempt by a creditor or its assignee to confirm an arbitration award rendered against a debtor. Although these cases were consolidated by order of this Court, I find after reviewing the records herein that the factual circumstances of each case are distinguishable and are more appropriately considered in a separate fashion.
Arbitration is an alternate dispute resolution process designed to conclude civil issues outside of the court system. Arbitration is a matter of contract between the parties and a way to resolve only those disputes that the parties have agreed to submit to arbitration. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Determination of whether there is a written agreement to arbitrate the controversy in question is a first and crucial step in any enforcement proceeding before the district court. MCI Telecommunications Corp. v. Exalon Indus., Inc., 138 F.3d 426, 429 (1st Cir (R.I.) 3/11/98); Collins v. Prudential Ins. Co. of America, 99-1423 (La.1/19/00), 752 So.2d 825, 831. Judicial review of an arbitration award is extraordinarily narrow. Berk-Cohen Associates, L.L.C. v. Orkin Exterminating Co., 264 F.Supp.2d 448, 451 (E.D.La.5/23/03). Once the court is satisfied that there exists an agreement to arbitrate, the court must confirm the arbitration award rendered unless it has been vacated, modified or corrected pursuant to the provisions of sections 9-12 of the Federal Arbitration Act. See, Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir.(Va.) 4/11/86).
Courts of appeals should apply ordinary standards when reviewing district court decisions upholding arbitration awards, i.e., accepting findings of fact that are not *738 "clearly erroneous" but deciding questions of law de novo; they should not, in those circumstances, apply a special "abuse of discretion" standard. First Options of Chicago, Inc. v. Kaplan, supra, 514 U.S. at 948, 115 S.Ct. at 1926.
In the MCI decision, which is relied upon by the majority, the court stated that if one of the parties alleges the inexistence of the contract, such a party is entitled to present evidence before the fact finder in support of this position and a determination of whether there is a written agreement to arbitrate the controversy must be made by the court. I find the cases herein to be distinguishable from the factual situation presented in MCI for two reasons: first, in MCI, there was no written arbitration clause within the body of the parties' agreement, and the present records contain an agreement expressly providing for arbitration; and secondly, unlike MCI, none of the parties in these cases have alleged the inexistence of the contractual agreement to arbitrate.[1]
In NCO Portfolio Management, Inc. v. Bertram Gougisha, plaintiff, as holder of an arbitration award, filed a petition to confirm the award pursuant to law, and defendant failed to make an appearance in the trial court. A default judgment was rendered against him confirming the award. In order to obtain reversal of a default judgment, defendant must overcome the presumption that the judgment was rendered upon sufficient evidence and that it is correct. When the judgment recites that it has produced due proof in support of its demand, as it does here, this presumption exists. Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325, 1328-1329 (La.1976).
Although the majority states that the evidence in this case was limited to barely legible copies of the credit card and arbitration agreements, I find that the agreement, which is entitled "Facsimile of Current Lending Agreement Terms as Presented to the Credit Customer and Reflected in the Records of the Creditor" clearly states that any claims or disputes between the parties, including the validity of the agreement, shall be resolved by binding arbitration. This agreement also contains all of the applicable terms of the credit agreement.
Further, although not mentioned in the majority opinion, the evidence in this case also contains an Affidavit of Correctness of Account as well as a supplemental affidavit submitted by plaintiff verifying that the documents submitted were business records of plaintiff pursuant to La. R.S. 13:3733. And importantly, the record contains an unanswered request for admission served on defendant which directly addresses the issue of whether an agreement existed between the parties in this case. The request states as follows:
It is a fact that your credit agreement authorized the arbitration process.
Defendant failed to file an answer to this request, and as such, the request is deemed admitted. La. C.C.P. art. 1467. See, Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325, 1329-1330 (La. 1976); Bellina v. Lazzara, 576 So.2d 1221, 1222 (La.App. 5 Cir.1991). Thus, the issue of whether an agreement existed between the parties authorizing the arbitration process *739 is supplied, among other things, by the admission of facts resulting from defendant's failure to deny the matters of which an admission was requested.
In fact, defendant did not raise the issue of the existence of an arbitration agreement at trial, nor did he file a motion for new trial after judgment was rendered against him. The issue of the existence of the agreement was not in controversy in the trial court, and thus, no evidence was submitted to substantiate defendant's claim. The first time defendant raised the issue was on appeal, and an appellate court is bound by the record before it.
After a review of the record in this case, I find sufficient evidence which supports the trial court's judgment in favor of the plaintiff in this case. Defendant admitted the existence of an arbitration provision in a credit agreement, and plaintiff submitted sufficient evidence to indicate an award was rendered against him on the basis of this agreement. In my view, the majority opinion frustrates the statutory policy of rapid enforcement of arbitration agreements. See, 9 U.S.C. Section 1, et. seq. I would therefore affirm the trial court's judgment based on the reasoning expressed herein.[2]
In MBNA America Bank, N.A. v. Nicole E. Burdett, plaintiff filed a petition to confirm an arbitration award, and subsequently substantiated the claim with two affidavits, a copy of the arbitration award, copies of notices to defendant and the alleged credit card agreement containing an express agreement to arbitrate. In response, defendant filed an answer generally denying the allegations of the petition. At no point in these proceedings did defendant raise the issue of the inexistence of a contractual agreement to arbitrate the matter in controversy, nor was such issue addressed by the trial court. Rather, defendant raised the issue of prescription of the claims, an argument that certainly should have been raised within three months of the date of the arbitration award pursuant to federal law, 9 U.S.C. Section 12.
However, a review of the transcript in this case indicates that the trial court denied plaintiff's Motion to Overrule the Exception and the matter was "set for trial." When the matter was re-set, the trial court stated that plaintiff's petition to confirm the arbitration award had been heard and denied at the previous hearing and that plaintiff's remedy was to "take it to the Court of Appeals." In my view, the transcripts contained in the instant record fail to contain any indication that the issue of the existence of an arbitration agreement was considered by the trial court. Accordingly, the majority's holding which affirms the trial court's judgment is improper and thwarts the underlying purpose of arbitration requiring a speedy resolution of issue presented. Based on the posture of the record in this case, I would vacate the trial court's judgment and remand the case to the trial court for the limited purpose of conducting a de novo determination of whether there is an agreement between the parties to arbitrate this matter.
In FIA Card Services, N.A. v. Dorothy Chouest, plaintiff, as holder of the arbitration award, filed a petition to confirm the award with a request for admission of fact, and subsequently substantiated the claim with two affidavits, a copy of the arbitration award, copies of notices to defendant and the alleged credit card agreement containing *740 an express agreement to arbitrate. In response, defendant filed an answer generally denying the allegations of the petition. Defendant in this case also raised the issue of whether a valid agreement to arbitrate existed between the parties. At the hearing of this matter, the trial court addressed issues of whether plaintiff's claim had prescribed or whether defendant had received sufficient notice of the arbitration award. My review of the transcript of these proceedings reveals that the trial court failed to conduct a de novo review of the issue of whether a valid arbitration agreement exists between the parties, and instead focused on issues which were precluded by defendant's failure to timely challenge the arbitration award rendered against her. Under the circumstances presented herein, I would vacate the trial court's judgment in this matter and order the trial court to consider this issue on remand.
Thus, for the reasons assigned herein, I would affirm the trial court's judgment in NCO Portfolio Management, Inc. v. Bertram Gougisha, on rehearing. In MBNA America Bank, N.A. v. Nicole E. Burdett and FIA Card Services, N.A. v. Dorothy Chouest, I would vacate the judgments of the trial court and remand the matters to the trial court. The only issue for the court to decide on remand would be whether defendants entered into credit agreements with MBNA which contained a provision requiring arbitration of these disputes. If the court determined after a consideration of the evidence submitted that such agreements exist, then the arbitration awards entered against them should be confirmed.
GUIDRY, J., Dissents for Reasons Assigned by ROTHSCHILD, J.
NOTES
[1] The trial court held two hearings on MBNA's motion. In the first, the trial court noted prescription was the defense and denied the confirmation, telling the MBNA to "set it for trial." In the second, the MBNA stated it was their understanding that the Motion to Compel Discovery had been denied and this was a Motion to Confirm the Arbitration Award. The trial court noted that he had denied the motion to confirm the arbitration award and MBNA's remedy was to take an appeal. However, the minutes state that in the first hearing the court denied the Motion to Compel. There was no written judgment after the first hearing. A judgment was signed after the second hearing denying the arbitration award.
[2] In Case Nos. 07-CA604 and 07-CA-882, the party seeking to confirm the arbitration award was the assignee of the creditor's debt. We acknowledge that the credit card agreement provides that the debt may be assigned, however, the plaintiffs in those cases have not shown that there was a valid assignment of the debt.
[3] Apparently aware that these documents were barely legible, the creditor has attached a document entitled "better copy of credit agreement" to one of the briefs filed in these consolidated cases.
[1] Neither Bertram Gougisha nor Nicole Burdett raised the issue of the existence of an agreement at any point prior to the briefs filed in this court. In fact, Nicole Burdett's original brief on appeal does not raise the issue of the existence of an agreement to arbitrate the matter. While defendant Dorothy Chouest averred she had no documents indicating she agreed to arbitrate the dispute, she failed to allege the inexistence of a credit card agreement containing an arbitration clause.
[2] Although a panel of this Court held in the original opinion in this matter that the trial court was precluded from considering the existence of an agreement based on defendant's failure to timely challenge the award, I would set aside the reasoning and holding of that opinion and adopt the reasoning set forth herein.