# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1011


## NCO PORTFOLIO MANAGEMENT, INC.

## VERSUS

## MARY WALKER


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20080362
HONORABLE J. BYRON HEBERT, DISTRICT JUDGE

**********

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**


Gregory M. Eaton
April T. Pollet
Linda Louise Lynch
Eaton Group, LLC
P. O. Box 3001
Baton Rouge, LA 70821-3001
COUNSEL FOR:
    Plaintiff/Appellee - NCO Portfolio Management, Inc.

Alfred Smith Landry, Jr.
200 Lakewood Drive
Lafayette, LA 70503
Telephone:  (337) 234-5053
COUNSEL FOR:
    Defendant/Appellant - Mary Walker

**THIBODEAUX, Chief Judge.**

The trial court confirmed an arbitration award in favor of the plaintiff/appellee, NCO Portfolio Management, Inc. (NCO), and against the defendant/appellant, Mary Walker, for $17,594.59. The trial court then rendered a judgment against Ms. Walker in that amount. Ms. Walker appeals. We affirm.

I.

**ISSUES**

We must decide whether the trial court erred in confirming the arbitration award in favor of NCO and against Ms. Walker.

II.

**FACTS AND PROCEDURAL HISTORY**

Following an arbitration proceeding in August 2007, NCO was awarded $17,594.59 by the National Arbitration Forum (NAF), pursuant to the arbitration clause in an MBNA credit card agreement.[1] According to the "Account Detail," this amount represented a debtor balance and original claim amount of $11,268.65, and the remainder is presumably interest and fees. Ms. Walker's last credit card payment was made on March 31, 2005, and was in the amount of $237.00. Ms. Walker did not attend the arbitration proceeding. The Account Detail shows Ms. Walker's address as 1009 Albertson Parkway, Broussard, Louisiana 70518-5091. The arbitration "Award" in the record contains the same address. The cover letter, dated August 14, 2007, transmitting notification of the award to Ms. Walker indicates that it was

---

[1]NCO Portfolio Management, Inc. acquired ownership of MBNA's accounts payable and acquired electronic files from MBNA detailing the names, account numbers, and outstanding balances of MBNA credit card holders. The date of the acquisition is unknown. Following a January 2006 merger between MBNA Corporation and Bank of America Corporation, in June of 2006, MBNA America Bank, N.A. (the credit card division) changed its name to FIA Card Services, N.A.

mailed to her in care of James W. Schwing, Sr., 411 Iberia Street, New Iberia, Louisiana 70560, presumably Ms. Walker's former attorney. The award certifies that it was sent to the parties at the shown addresses, or to their representatives. Ms. Walker has never alleged that she did not receive notice of the award or the petitions and pleadings filed by NCO.

The award further certifies that a claim was filed with NAF, that it was properly served upon the respondent, and that NAF sent her a second notice of the arbitration, as well as a hearing notice of the proceedings, and that all parties had had the opportunity to present evidence. The award also certifies that the matter was indeed arbitrable and had proceeded according to the forum's code of procedure, that the evidence and substantive law supported issuance of the award, and that no party had asserted that the arbitration agreement was invalid or unenforceable.

On December 7, 2007, NCO's attorneys wrote Ms. Walker describing the debt and offering to verify it and send her the name and address of the original creditor if different from the current creditor. The correspondence gave Ms. Walker the opportunity to dispute the validity of the debt or any portion thereof within thirty days. Ms. Walker failed to respond.

On January 17, 2008, NCO filed a document entitled "Petition to Confirm Arbitration Award." The petition indicated NCO's choice to proceed by ordinary process but specifically reserved its rights to summary proceedings pursuant to La.R.S. 9:4209. Service of the petition was requested upon Mary Walker at 1009 Albertson Parkway, Broussard, Louisiana 70518-5091, and it was accompanied by a Request For Admissions of Fact.

On February 8, 2008, Ms. Walker filed a "Motion to Vacate Arbitration Award" along with a "Peremptory Exception of No Cause or Right of Action," a

2

"Peremptory Exception of Prescription," and an "Answer to Request For Admission of Fact." Ms. Walker's motion to vacate the award and her exception of no cause or right of action were identical. Both asserted that she had never entered into a contract with NCO; that NCO had no cause of action against her; that she had never received notice of the arbitration proceedings; and, that the award "in favor of MBNA" was made at a time when MBNA did not exist as a legal entity. Ms. Walker's exception of prescription asserted that the plaintiff had failed to institute proceedings against her within three years of her last payment and that the arbitration and the action to confirm the award had prescribed.

On February 14, 2008, NCO propounded a "Request for Genuineness of Document and Request for Production of Document" attaching the card member agreement authorizing arbitration, the arbitration award, and notice of the award. Ms. Walker was asked to produce any documents which might indicate information other than that presented by the creditor. The record contains no responses to these requests.

Ms. Walker's supporting memorandum in support of her exceptions denied a card member agreement with NCO or their assignors and demanded proof of NCO's right to proceed against her. It contained no reference to evidence regarding her own agreement or her debt.

On April 7, 2008, NCO filed a document entitled "Motion and Memorandum to Confirm Arbitration Award and to Compel Discovery." NCO's motion asserted that Ms. Walker's exceptions and motion to vacate were unsustainable where an arbitration award was entered in favor of NCO, giving NCO a right of action to have it confirmed. NCO's motion further asserted that NCO, having obtained the award on August 13, 2007, and having filed its petition to

confirm the award on January 17, 2008, had filed within the one-year time limit for confirming an award.

NCO argued that Ms. Walker's February 2008 motion to vacate the August 2007 award had prescribed in November 2007, because the motion to vacate had to be filed within three months of the date of the award. NCO further asserted that Ms. Walker's responses to the Request for Admissions did not deny the agreement to arbitrate and did not deny that Ms. Walker did not timely file the motion to vacate, modify or correct the arbitration award. NCO further asserted that Ms. Walker had not provided any information in discovery to disprove the information that NCO had presented; nor did she respond to NCO's request for genuineness of the notice of the arbitration proceedings, the arbitration award, or the award notice. NCO asserted that those issues are deemed admitted and that no further evidence is required of it. NCO further argued that Ms. Walker must allege sufficient facts to support her exceptions and affirmative defenses. NCO's supplemental memorandum cited the substantive law and the statutes governing the arbitration process found at La.R.S. 9:4201, et seq.

On April 21, 2008, Ms. Walker's attorney filed a "Motion to Traverse Setting of Hearing on Motion to Confirm and Exception of Lis Pendens." The motion asserted that NCO had filed an ordinary proceeding, and that after Ms. Walker had filed exceptions and an answer to the ordinary proceedings herein, NCO ignored the answer and exceptions and asked for a summary confirmation of the award without "other formality and without rejecting or changing its earlier election to proceed by Ordinary Proceedings." NCO filed a motion to overrule all of Ms. Walker's exceptions, stating that the exceptions could be heard simultaneously with the motion to confirm the award, and therefore the exception of lis pendens was moot.

4

The trial court denied Ms. Walker's exception of no right or cause of action and her exception of prescription. The trial court further found that Ms. Walker's motion to vacate the award had prescribed and granted NCO's motion to confirm the award. Ms. Walker then filed this appeal.

III.

## LAW AND DISCUSSION

### Standard of Review

Errors of law are reviewed de novo. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). Confirmation of an arbitration award is reviewed *de novo*. *Sarofim v. Trust Company of the West,* 440 F.3d 213 (5th Cir. 2006). A district court's review of an arbitration award is "extraordinarily narrow." *Downer v. Siegel,* 489 F.3d 623, 626 (5th Cir.), *cert denied,* 76 U.S. 3212, 3286, 3287, 128 S.Ct. 7212 (2007).

### State and Federal Law on Arbitration

Louisiana has adopted the federal policy favoring arbitration. *Aguillard v. Auction Mgmt. Corp.*, 04-2804, 04-2857 (La. 6/29/05), 908 So.2d 1. Arbitration in this state is governed by the Louisiana Arbitration Law ("LAL") found at La.R.S. 9:4201-4217. The Federal Arbitration Act ("FAA") is located at 9 U.S.C. §§ 1- 16. The United States Supreme Court has made it clear that the substantive provisions of the FAA pre-empt state law and govern all written arbitration agreements in contracts connected to transactions involving interstate commerce. *Collins v. Prudential Ins. Co. of America,* 99-1423 (La. 1/19/00), 752 So.2d 825. "Whether a claim is brought in state court or federal court, and whether a claim is based on state or federal law, courts must enforce arbitration agreements in contracts covered by the FAA, notwithstanding any state statutory or jurisprudential rules to the contrary." *Collins*,

5

752 So.2d. at 827 (citations omitted). The phrase "involving commerce" has been interpreted as the functional equivalent of "affecting commerce," and the Supreme Court has concluded that Congress intended to exercise its commerce powers to the fullest in legislating in favor of arbitration. *Id.*

In the present case, with regard to the pertinent provisions, both the state and federal statutes under the FAA and the LAL contain identical or almost identical language addressing the issues under consideration. More specifically, both statutes provide that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." La.R.S. 9:4201; 9 U.S.C. § 2.

Both statutes provide that any party to the arbitration may apply to the court for an order confirming the award, at any time "within one year after the award is made" and that the court shall/must grant such an order "unless the award is vacated, modified, or corrected" as prescribed in the respective sections addressing vacature and modification. La.R.S. 9:4209; 9 U.S.C. § 9.

The state and federal statutes list the same four grounds for vacating an award made by arbitrators following arbitration proceedings.

The grounds as listed in La.R.S. 9:4210 are as follows:

> A. Where the award was procured by corruption, fraud, or undue means.
>
> B. Where there was evident partiality or corruption on the part of the arbitrators or any of them.
>
> C. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been prejudiced.
>
> D. Where the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and

6

> definite award upon the subject matter submitted was not
> made.

See also 9 U.S.C. § 10.

Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney "within three months after the award is filed or delivered." La.R.S. 9:4213; 9 U.S.C. § 12.

Both state and federal statutes require that identical documentation be filed with the clerk when confirming, modifying, or correcting an award: (1) the agreement, the selection or appointment, if any, of an additional arbitrator or umpire, and each written extension of the time, if any, within which to make the award; (2) the award; and, (3) each notice, affidavit, or other paper used upon an application to confirm, modify, or correct the award, and a copy of each order of the court upon such an application. La.R.S. 9:4214; 9 U.S.C. § 13. The resulting judgment "shall be docketed as if it were rendered in an action" and "shall have the same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action, and it may be enforced as if it had been rendered in an action in the court in which it is entered." La.R.S. 9:4214; 9 U.S.C. § 13.

Accordingly, "[a]rbitration is favored, and an arbitration award is res judicata. Unless grounds for vacating, modifying or correcting the award are established, the award must be confirmed, and the burden of proof is on the party attacking the award." *Louisiana Physician Corp. v. Larrison Family Health Ctr., L.L.C.*, 03-1721, p. 2 (La.App. 3 Cir. 4/7/04), 870 So.2d 575, 578; *Chase Bank USA, N.A. v. Roach*, 07-1172 (La.App. 3 Cir. 3/5/08), 978 So.2d 1103, 1104. "It is well settled in both state and federal courts that an award may be challenged only on the grounds specified in the statute. The court cannot substitute its conclusion for that of the arbitrator." *Firmin v. Garber*, 353 So.2d 975, 977 (La.1977) (citations

7

omitted).  The grounds for setting aside an arbitration award are specifically set out

in La.R.S. 9:4210.  Absent the existence of one of the specified grounds, a reviewing

court is prohibited from reviewing the merits of an arbitrator's decision.  *Louisiana*

*Physician Corp.,* 870 So.2d 575; see also *Allen v. A & W Contractors, Inc.,* 433 So.2d

839 (La.App. 3 Cir.), *writ denied,* 438 So.2d 578 (La.1983).

In the furtherance of the purpose and intention of arbitration as a

substitute for litigation, the scope of judicial review as to the findings of an arbitrator

is severely restricted, and courts have consistently respected this limitation.

"Accordingly, a court does not ordinarily sit in an appellate capacity to an arbitration

panel, but confines its determination to whether there exists one or more of the

specific grounds for impeachment as provided under the applicable statute."  *Town*

*of Melville v. Safeco Ins. Co. of America,* 94-1039, p. 8 (La.App. 3 Cir. 3/1/95), 651

So.2d 404, 409, *writ denied,* 95-0836 (La. 5/5/95), 654 So.2d 333, quoting *City of*

*Sulphur v. Southern Builders, Inc.,* 579 So.2d 1207, 1210 (La.App. 3 Cir.), *writ*

*denied*, 587 So.2d 699 (La.1991).

Based upon the foregoing, NCO complied with the procedures outlined

in the statutes for obtaining and confirming an award on the credit card debt of Ms.

Walker.  NCO went forward with arbitration proceedings and filed a motion to

confirm the arbitration award, submitting the documentation required in La.R.S.

9:4214 and 9 U.S.C. § 13, the written arbitration agreement, the arbitration award,

and appropriate affidavits.  More specifically, NCO submitted the MBNA credit card

agreement and amendments showing arbitration clauses almost identical to those

described in *Chase Bank USA, N.A. v. Roach,* 978 So.2d 1103.[2]  NCO also submitted

---

[2]There, Roach defaulted on her credit card payments to Chase Bank, and then, as in the
present case, failed to respond to notices, failed to attend the arbitration proceeding, and failed to
respond to the award until after Chase filed a motion to confirm the award.  While the issue was
venue in that case, we reversed the trial court's denial of jurisdiction and confirmed the award.  The
credit card agreement in *Chase*, which contained almost identical language, stated:

the arbitration award,[3] certifying that notices of the arbitration proceedings were properly provided to Ms. Walker and that all procedures were followed. NCO submitted affidavits describing the chain of command of Ms. Walker's debt as it passed from MBNA to NCO through mergers and acquisitions. NCO timely brought its motion to confirm the award within one year of its issuance, pursuant to La.R.S. 9:4209 and 9 U.S.C. § 9, wherein it filed a petition to confirm in January 2008 and a motion to confirm in April 2008 after the award was issued in August 2007.

On the other hand, Ms. Walker's actions consist of: failing to pay her credit card payments for two and a half years; failing to respond to correspondence and notices regarding the arbitration proceedings and NCO's claims; failing to attend arbitration; failing to respond upon receipt of the award against her; failing to timely answer suit; and, failing to respond timely to the motion to confirm the award. When Ms. Walker finally filed her motion to vacate the award in February 2008, six months after it was issued in August 2007, she was well beyond the three month period prescribed in La.R.S. 9:4213 and 9 U.S.C. § 12 for bringing a motion to vacate.

---

Arbitration: Any claim, dispute or controversy ("Claim") by either you or us against the other or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, including Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved by binding arbitration by the National Arbitration Forum, under the Code of Procedure in effect at the time of claim is filed. Rules and forms of the National Arbitration Forum may be obtained and Claims may be filed at any National Arbitration Forum office, www.arb-forum.com, or P.O. Box 50191, Minneapolis, Minnesota 55405, telephone 1-800-474-2371. Any arbitration hearing at which you appear will take place at a location within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. 1- 16. Judgment upon any arbitration award may be entered in any court having jurisdiction.

*Chase Bank USA, N.A.,* 978 So.2d at 1103-04.

[3]The arbitration award in the record stated that, after obtaining proof of service of the claim against Ms. Walker, the arbitrator, National Arbitration Forum (NAF), sent Ms. Walker a second notice of arbitration and a hearing notice. The record also contained a letter from NAF to Ms. Walker and NCO, dated August 14, 2007, serving a copy of the award to Ms. Walker. Ms. Walker has not denied receipt of the letter or the award; nor has she alleged that her address was wrong on NCO's records.

Moreover, Ms. Walker's motion to vacate did not assert any of the four grounds regarding fraud and arbitrator misconduct set forth in La.R.S. 9:4210 and 9 U.S.C. § 10. Additionally, Ms. Walker failed to provide substantiating evidence of any kind to support her exceptions or her motion to vacate. At trial, counsel for Ms. Walker addressed only a lis pendens exception, arguing that NCO had no right to proceed in a summary proceeding without dismissing the ordinary proceeding, even though the January petition to confirm and the April motion and memorandum to confirm were both filed under the same docket number and both pleadings referenced La.R.S. 9:4201, et seq.

Ms. Walker's basis for this appeal is that the trial court confirmed the arbitration award against her without requiring admissible evidence of the existence of an agreement to arbitrate. The record reveals that this argument on insufficiency of the evidence is raised for the first time on appeal. Ms. Walker did not argue the evidence or the law at the trial of this matter, nor in her pre-trial briefs to the trial court. She did not cite one case or statute in support of her position; nor did she enter a single exhibit. Ms. Walker did not provide a copy of her credit agreement with MBNA, or present any evidence of her own to show the existence or non-existence of an arbitration clause. Ms. Walker merely alleged in her February 2008 exceptions and motion to vacate the arbitration award that she had not agreed to an arbitration with NCO; however, she did not deny an agreement with MBNA.[4]

In this case, where the record is void of evidence or argument that the MBNA agreement which contained binding arbitration language, and which was entered into evidence by NCO, was not the one delivered to Ms. Walker, or that it

_____

[4]In her memo in support of her exceptions, Ms. Walker denied being a party to a card member agreement with NCO "or their assignors." However, she did not argue this issue at trial or deny the debt with MBNA. Her argument at trial focused on a lis pendens exception.

was invalid due to adhesion, or that Ms. Walker's consent was vitiated by some form of error, the arbitration agreement in evidence supports confirmation of the award against Ms. Walker. *See Fontenot v. Southern Energy Homes, Inc.*, 07-1114 (La.App. 3 Cir. 3/5/08), 978 So.2d 549.

Ms. Walker argues for the first time that the three month limitation on filing a motion to vacate an arbitration award did not come into play until there was admissible proof of a valid agreement to arbitrate. On appeal, she cited *NCO Portfolio Management Inc. v. Gougisha*, 07-604 (La.App. 5 Cir. 4/29/08), 985 So.2d 731, *writ denied,* 08-1146 (La. 9/26/08), 992 So.2d 986, for the proposition that the time limit imposed in the FAA for the debtor to vacate or modify the arbitration award does not come into play unless there is a valid written agreement to arbitrate. While we would of course clearly agree with the basic tenet that there must first be a valid agreement, we question a court's allowance of a debtor's delayed challenge to validity and consent *after* arbitration proceedings are held and an award is issued and confirmation is sought. The very purpose of arbitration is to relieve the courts of unnecessary litigation.

We note that *Gougisha,* which has not been followed by other decisions, appears to be the only Louisiana case specifically holding that the validity of an agreement can be challenged *after* an award is issued and *after* the motion to vacate has prescribed. Further, *Gougisha* involved the consolidation of three credit card cases, and it is not clear from the facts whether all three defendants refused to respond or participate or object to arbitration until after confirmation of the awards were sought.

We also question the *Gougisha* court's reliance on *MCI Telecommunications Corp. v. Exalon Industries,* Inc., 138 F.3d 426 (1st Cir. 1998)

11

where the court appears to misinterpret the FAA as *requiring* the party seeking arbitration to petition the court for an order enforcing the agreement, at which time the validity of the agreement would be determined. However, the section referenced is permissive, not mandatory. More specifically, *MCI* quotes Section 4 of the FAA in pertinent part and discusses it as follows:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration *may* petition any . . . district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.

> 9 U.S.C. § 4. Upon receipt of such a petition, the district court determines whether there was an agreement to arbitrate. If the existence of the agreement is not in issue, the court must proceed forthwith to "make an order directing the parties to proceed to arbitration." In contrast, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." MCI's position is that a party "aggrieved by the failure . . . of another to arbitrate" may initiate arbitration on its own and prevail by default, rather than first seeking an order under section 4. But the focus of section 4 is on the party seeking arbitration, *who must affirmatively petition for a court order enforcing the agreement.* It is unlikely that Congress intended to allow the provisions of section 4 to be bypassed so easily.

*MCI Telecommunications, Corp.*, 138 F.3d at 430 (emphasis added).

Accordingly, the *MCI* court appears to have a flaw in its logic. Section 4 permits ("may") but does not require ("must") a party to affirmatively petition the court for an order enforcing arbitration. Rather, the statutes indicate that a creditor my proceed directly to arbitration, where the arbitrators, at least the NAF used by the credit card creditors in the cases researched, certify that all advance notices of the claim and of the arbitration hearing, as well as any resulting award, were timely and properly sent to the debtor. Accordingly, based upon the facts in the present case, we decline to follow the fifth circuit's reliance in *Gougisha* on the *MCI* case.

In response, NCO cites *Spencer v. Hoffman,* 392 So.2d 190 (La.App. 4 Cir. 1980), which specifically held that the judicial system is precluded from exercising jurisdiction once arbitration has commenced, except for a motion to vacate, modify or correct the award. However, in *Spencer*, both parties agreed to and participated in arbitration. Accordingly, while we agree with *Spencer* on the facts in that case, where the Louisiana Supreme Court has not spoken on this specific issue, we will not apply the broad holding in *Spencer* to the facts in the present case. In the present case, we find that Ms. Walker is precluded from challenging the sufficiency or admissibility of NCO's evidence of the MBNA credit card agreement, containing the arbitration clause, on appeal when she was unresponsive prior to trial and failed to put on evidence or argue admissibility of NCO's evidence at trial.

Ms. Walker further states that the trial court erred in "declaring that it did not have jurisdiction or authority to rule on whether an 'Agreement to Arbitrate' existed between Mary Walker and the original credit card account creditor." This assertion confuses the issues and is without merit. The trial court did not "declare" that it had no jurisdiction to rule on the existence of an agreement to arbitrate between Ms. Walker and MBNA as this issue was not squarely before the court. While Ms. Walker made conclusory pre-trial assertions that she never entered into a contract with NCO, and that the award "in favor of MBNA" was made at a time when MBNA did not exist as a legal entity, Ms. Walker never specifically asserted that she did not enter into a contract with MBNA, which she clearly did because she used their credit card to amass debt, and the court had evidence of such transactions.

Further, the award was never "in favor of MBNA." The award was in favor of NCO. Moreover, in response to NCO's request for admissions, Ms. Walker did not deny that her credit agreement authorized the arbitration process, but rather

13

replied that "Any such Credit Agreement, and the validity thereof, speaks for itself." The only credit agreement in evidence was the MBNA agreement provided by NCO, which did contain an arbitration clause.

The only other vague allusion to validity was in Ms. Walker's one-and-a-half page memorandum in support of her pre-trial exceptions. While the memorandum was void of legally supported arguments and contained mostly rhetorical questions for the court about the unfairness of credit card companies and their agreements in general, it did berate the card companies' attempts to amend agreements at any time they wished. This reference to amendments was the only remark approaching a validity argument, and it was not supported in the memorandum or argued at trial. Notwithstanding, we note that a financial institution's agreements with its customers may be amended if, following notice of a change in the terms of the agreement, the customer continues performance under the agreement. *See Marsh v. First USA Bank, N.A.,* 103 F.Supp.2d 909 (N.D.Tex. 5/23/00) (continued use of credit card after notice of amendments to terms of agreement were binding on card user; evidence was sufficient to raise presumption that holders received insert containing amendment to credit card agreement requiring arbitration).

The trial court did properly decline to address the merits of the dispute. It addressed Ms. Walker's exceptions as if they had been brought to defeat the confirmation. In reality, they were brought to defeat the arbitration proceeding itself. More specifically, instead of addressing whether NCO was the proper party to seek recovery of the debt because Ms. Walker asserted that she never had a contract with NCO, the trial court found that NCO had a right of action by virtue of the award in its favor, which was admitted into evidence. As previously indicated, the record

14

contained the award in favor of NCO and the affidavit of an NCO representative explaining NCO's acquisition of MBNA.

Likewise, the trial court declined to address Ms. Walker's exception of prescription on Ms. Walker's argument that NCO had failed to bring proceedings within three years from the date of Ms. Walker's last payment. While untrue, that issue would have been in the province of the issues decided by the arbitrators.[5] Instead, on the issue of prescription, the trial court found that NCO's action had not prescribed because it brought the motion to confirm the award within the one-year prescriptive period beginning with the date of the award. We find no error on the part of the trial court in declining to address the merits of the dispute or in confirming the award in favor of NCO.

IV.

**CONCLUSION**

Based upon the foregoing, we affirm the judgment of the trial court confirming the award against Ms. Walker and in favor of NCO Portfolio Management, Inc. and denying Ms. Walker's exceptions of no cause of action, no right of action, and prescription. Costs of this appeal are taxed to the appellant, Mary Walker.

**AFFIRMED.**

---

[5]NCO brought the arbitration proceeding in August 2007, approximately two and a half years after the date of Ms. Walker's last payment in March of 2005. However, Ms. Walker cites no statute setting forth this three-year limitation, and research has discovered none within the FAA or the LAL.

15