OPINION OF THE COURT
Diane A. Lebedeff, J.
After credit card issuers and credit card debt holders turn to arbitration to address delinquent credit card accounts, as they do increasingly, courts are presented with postarbitration petitions to confirm arbitration awards and enter money judgments (CPLR 7510). This decision sets out the statutory and constitutional framework for review of a petition to confirm a credit card debt arbitration award, utilizing legal precepts relating to confirming arbitration awards and credit cards, a novel approach most suited to this type of award.[1]
Briefly put, to grant a petition to confirm an arbitration award on a credit card debt, a court must require the following: (1) submission of the written contract containing the provision authorizing arbitration; (2) proof that the cardholder agreed to arbitration in writing or by conduct; and (3) a demonstration of proper service of the notice of the arbitration hearing and of the award. In addition, the court must consider any supplementary information advanced by either party regarding the history of the parties’ actions. Judicial review of the petition should commence under the New York provisions governing confirmation of an arbitration award, but — if the written contract and cardholder agreement are established by the petition — the manner of service of the notice and award and treatment of supplementary information should be considered under the Federal Arbitration Act provisions (9 USC § 1 et seq. [FAA]).
This pattern for judicial review is applicable whether or not the respondent defaults by failing to respond to the petition, as did the respondent in this proceeding. With the exception of the *965 need to make a special showing of the debtor’s agreement to the credit arrangement, all other requirements would apply to any petition to confirm an arbitration award not addressing credit card delinquency.
CPLR Standards to Confirm an Arbitration Award
A court presented with a petition seeking confirmation of a credit card debt arbitration award must utilize a four-pronged examination to determine if confirmation is merited under New York law.
First, a written agreement to arbitrate must be included within the petition, because a written agreement establishes jurisdiction to utilize the statutory summary confirmation procedure (CPLR 7501 [a “written agreement to submit any controversy ... to arbitration . . . confers jurisdiction on the courts of the state to enforce it and to enter judgment”]; see Kreiss v Hotaling, 96 Cal 617, 31 P 740 [1892] [citing cases from numerous jurisdictions, arbitration agreement not satisfying statute produces common-law award not subject to statutory summary confirmation]).[2] This requirement is underscored by the mandate that the judgment-roll for any resulting judgment include a copy of the arbitration agreement (CPLR 7514 [b] [“The judgment-roll consists of the original or a copy of the agreement” and other papers listed]; CCA 206 [b] [specifying CPLR 7510 through 7514 apply to confirmation of arbitration awards in the Civil Court]). Given these statutory provisions, it *966 is clear that the Civil Court is not relieved of the obligation to assure that such a written agreement is part of its record.[3]
Second, the binding nature of the credit card agreement must be established by the petition. It is peculiar to consumer credit card practices that the written agreement may be signed by the credit card issuer only (Personal Property Law § 413 [11] [c] [“the credit agreement may consist of an agreement . . . executed only by the financing agency”], [e] [“the financing agency delivers or mails ... to the buyer a copy of the agreement executed by the financing agency”]). The petition must establish that a unilateral contract is binding (Flores v Lower E. Side Serv. Ctr., Inc., 4 NY3d 363, 369 [2005], rearg denied 5 NY3d 746 [2005] [contract not signed by party to be charged is “enforceable, provided there is objective evidence establishing that the parties intended to be bound”]; God’s Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP, 6 NY3d 371, 374 [2006]), accomplished by the petitioner’s presentation of proof of the consumer’s subsequent use of the credit line (Personal Property Law § 413 [11] [c] [“The credit agreement . . . shall not become effective unless and until the retail buyer . . . signs a sales slip or memorandum evidencing purchase or lease of property or services”]). If the arbitration clause is contained in an amendment, the same type of showing is required (see Tsadi *967 las v Providian Natl. Bank, 13 AD3d 190, 190 [1st Dept 2004], lv denied 5 NY3d 702 [2005] [“Defendant sufficiently proved that it sent the arbitration provision to plaintiff. Plaintiff consented to it by failing to opt out and by continuing to use her credit cards”] [ citations omitted]).
Where the petitioner is the issuer of the credit card, a simple affidavit of a person with personal knowledge may present the relevant documents and supporting proof. If the affidavit is signed and notarized outside New York state, it should be accompanied by a certificate of conformity and some courts require an additional certification of authority (see Citibank [S.D.], N.A. v Martin, 11 Misc 3d at 224 [citing cases]; CPLR 2309 [c]).[4]
Third, petitioner must show that service of notice of the arbitration session and notice of the award was in compliance with New York’s statute. Notice of the scheduled arbitration session must be given by the arbitrator in a specified manner (CPLR 7506 [b] [“The arbitrator shall appoint a time and place for the hearing and notify the parties in writing personally or by registered or certified mail not less than eight days before the hearing”]; Matter of Goldfinger v Lisker, 68 NY2d 225, 231 [1986] [“Arbitrators . . . may act only upon proof adduced at a hearing of which due notice has been given to each party”]; Worldwide Asset Purch., LLC v Karafotias, 9 Misc 3d at 396 [requiring “proof. . . that timely written notice of the time and place of the arbitration hearing . . . was delivered”]).
The award is required to be “signed and affirmed by the arbitrator” and “[t]he arbitrator shall deliver a copy of the award to each party in the manner provided in the agreement, or, if no provision is so made, personally or by registered or certified mail, return receipt requested” (CPLR 7507). If an arbitration organization is named in the agreement, its rules may govern service of the award (David D. Siegel, NY Prac § 600, at 1060 [4th ed]).
*968 Finally, special considerations may arise if any party presents information about the parties’ prior forays into the judicial arena or actions within the arbitration process. For example, if the arbitration at issue were directed by a court on an earlier petition to stay or compel arbitration, revisiting some issues may be barred under principles of res judicata, or a party who participated in the arbitration may have limited rights to request subsequent judicial relief (CPLR 7511 [b] [2] [grounds to vacate award for “a party who neither participated in the arbitration nor was served with a notice of intention to arbitrate”];[5] Matter of United Fedn. of Teachers, Local 2, AFT, AFL-CIO v Board of Educ. of City School Dist. of City of N.Y., 1 NY3d 72, 79 [2003]). However, generally, a party who did not participate in the arbitration may raise a lack of arbitrability as a defense to a petition to confirm an arbitration award (Siegel, NY Prac § 607, at 1074 [under New York law, respondent may “save() the application to use in opposition to the winner’s motion to confirm, for which the winner has a year, the loser also gets that year for the vacatur application”]), or in petition to “vacate or modify an award . . . within ninety days after its delivery” (CPLR 7511 [a]).
Federal Arbitration Act Standards to Confirm an Arbitration Award
Because the petition to confirm the arbitration award pleads that this matter arises under a credit card agreement, the court will consider whether any different analysis is dictated by the Federal Arbitration Act. Once a credit card arbitration agreement and its binding nature are established, the FAA is properly applied to credit card agreement arbitration issues (see In re Currency Conversion Fee Antitrust Litig., 265 F Supp 2d 385, *969 400-416 [SD NY 2003]; Vigil v Sears Natl. Bank, 205 F Supp 2d 566, 568 [ED La 2002]; Bank One, N.A. v Coates, 125 F Supp 2d 819, 831-833 [SD Miss 2001], affd 34 Fed Appx 964 [5th Cir 2002]), because the nature of a credit card contractual relationship implicates interstate commerce (see Henry C. Strickland, The Federal Arbitration Act’s Interstate Commerce Requirement: What’s Left for State Arbitration Law?, 21 Hofstra L Rev 385 [1992], as to general procedural issues). The same factors considered in a state law analysis are appropriate to a review of a petition to confirm an arbitration award under FAA standards.
First, presentation of a written agreement to arbitrate is required by the FAA, as it is for the CPLR. The FAA itself states that the FAA applies only to written agreements to arbitrate (9 USC § 2 [“A written provision ... to settle by arbitration a controversy thereafter arising . . . (or) to submit to arbitration an existing controversy . . . shall be valid”]). The written agreement must be included in the court record (9 USC § 13 [a] [“at the time (an) order is filed with the clerk for the entry of judgment . . . (the moving party shall) file . . . with the clerk . . . (t)he agreement”]).[6] Advancing a written arbitration agreement is essential to the application of the FAA (EEOC v Waffle House, Inc., 534 US 279, 294 [2002] [“Because the FAA is ‘at bottom a policy guaranteeing the enforcement of private contractual arrangements’ ... we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals”]), and research has disclosed no federal case in which the agreement was not presented to the court.
Second, proof of the binding nature of the agreement to arbitrate is required by the FAA, as it is for the CPLR. State laws regarding contract formation remain applicable, such as those contained in Personal Property Law § 413 or the law of a jurisdiction identified in the agreement (Allied-Bruce Terminix Cos. v Dobson, 513 US 265, 281 [1995] [“States may regulate contracts, including arbitration clauses, under general contract law principles” for FAA only bars a “state policy . . . (that) *970 would place arbitration clauses on an unequal ‘footing’ ”]; see Stone v Golden Wexler & Samese, P.C., 341 F Supp 2d 189 [ED NY 2004, Dearie, J.] [discussing variation among state laws regarding amendments to credit card agreements]).
Third, as to service of notice of the arbitration session and notice of the award, the FAA itself contains no specific directive concerning service of the notice of the arbitration session or of the award, and the CPLR requirements are supplanted only if a contract’s arbitration clause dictates some other manner of service or references the rules of an arbitration body which contains other service provisions (Volt Information Sciences, Inc. v Board of Trustees of Leland Stanford Junior Univ., 489 US 468, 476 [1989] [“There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate”]; see Smith v Positive Prods., 419 F Supp 2d 437, 446 [SD NY 2005] [“New York law, which requires notice by registered mail or personal service, is inapplicable. The parties expressly agreed in the January Agreement arbitration clause that the AAA’s Rules would govern”]). Federal courts appear to reject technical objections to service of arbitration notices if actual or constructive notice is seen as sufficient (see Shamah v Schweiger, 21 F Supp 2d 208, 215 [ED NY 1998] [collecting cases]), without upholding notice failing to satisfy due process concepts (Mullane v Central Hanover Bank & Trust Co., 339 US 306, 314 [1950] [“An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections”]). Accordingly, given that a difference exists between the CPLR and FAA as to service of notices, if either service does not satisfy New York standards, a petitioner should identify any departure from CPLR requirements and establish that such variance is permitted by the language of the arbitration provision itself or by the rules of an arbitral body named in the arbitration provision.
Finally, again, any information presented regarding the prior conduct of the parties in relation to the arbitration merits judicial consideration. The primary noteworthy difference is that, in FAA cases, federal courts apply FAA award vacatur principles (Florasynth, Inc. v Pickholz, 750 F2d 171, 177 [2d Cir 1984] [rejecting New York rule and concluding under the FAA *971 “a party may not move to vacate after three months from the time the arbitration panel issued its award”]), although some commentators have pointed out that a preemption conclusion is questionable and not reached universally (6 Bruner and O’Connor, Construction Law § 20:20 [2005] [“FAA preemption of state law — Scope of FAA preemption: Vacatur disputes and procedural matters”]; Jill I. Gross, Over-Preemption of State Vacatur Law: State Courts and the FAA, 3 J Am Arb 1 [2004]), leaving aside the more sophisticated issues posed by multiparty arbitration (see, collecting cases and examples, Michael H. Bagot, Jr., and Dana A. Henderson, Not Party, Not Bound? Not Necessarily: Binding Third Parties to Maritime Arbitration, 26 Tul Mar L J 413 [2002]). However, nothing is presented here which requires exploration of this issue, which has not yet been resolved by a decision of the United States Supreme Court.
Conclusion
Under both the state law and the FAA standards set forth above, the instant application to confirm must be denied. No agreement with an arbitration clause is tendered, nor is there a supporting affidavit establishing that any such agreement was binding. The notice of the arbitration session and of the award were not served as mandated by the CPLR (Goldfinger v Lisker, 68 NY2d at 231 [“Precisely because arbitration awards are subject to . . . judicial deference, it is imperative that the integrity of the process ... be zealously safeguarded”]); no different result could be reached under an FAA analysis because petitioner does not show a different manner of service was authorized by the language of an arbitration clause.[7] Petitioner advances no information about the past conduct of the parties and, accordingly, no further analysis is necessitated by the record.
Based on the foregoing, the petition is denied, without prejudice to renewal upon proper papers (CPLR 7502 [a] [iii] *972 [“Notwithstanding the entry of judgment (on an application relating to an arbitrable controversy), all subsequent applications shall be made by motion in the special proceeding or action in which the first application was made”]; see Matter of Gleason [Michael Vee, Ltd.], 96 NY2d 117 [2001]).[8]

. Although the analysis is different, the results reached here are consistent with conclusions reached in other cases (see Worldwide Asset Purch., LLC v Karafotias, 9 Misc 3d 390 [Civ Ct, Kings County 2005, Battaglia, J.] [denying default judgment on credit card arbitration award]; see Citibank [S.D.], N.A. v Martin, 11 Misc 3d 219 [Civ Ct, NY County 2005, Lebedeff, J.] [credit card collection plenary action and summary judgment motion requirements]).

. The common sense behind this principle is clear because a written agreement to arbitrate cloaks an arbitrator with a power subject to judicial deference and
“[a]bsent some grant of authority from the person who is to be bound by the award, ‘the officious intermeddlers who gave their opinion on the matter would be no more arbitrators than any of the thousands of men and women who pass through New York’s Grand Central Station each morning’ ” (Alan Scott Rau, The Arbitrability Question Itself, 10 Am Rev Inti Arb 287, 298 [1999], quoting William W Park, Determining Arbitral Jurisdiction: Allocation of Tasks Between Courts and Arbitrators, 8 Am Rev Inti Arb 133, 134 n 7 [1997]).
Of course, the copy of the agreement tendered must be readable (see CPLR 4544 [“any printed contract. . . involving a consumer transaction . . . where the print is not clear and legible . . . may not be received in evidence in any trial, hearing or proceeding on behalf of the party who printed or prepared such contract or agreement”]).

. Without a proper judgment-roll, a judgment confirming an arbitration award will not be docketed (73 NY Jur 2d, Judgments § 81 [“the judgment cannot be docketed until immediately after filing the judgment-roll, and . . . the judgment becomes a lien only upon docketing”] [internal quotation marks omitted]; Newman v Schwert, 245 App Div 46, 47 [4th Dept 1935] [“the clerk cannot be compelled to file (a judgment-roll) and docket a judgment. . . until the plaintiff has furnished” what is required by statute for a judgment-roll]). This CPLR requirement is applicable to the Civil Court on applications to confirm an arbitration award (CCA 1502 [b]), notwithstanding any differences in docketing Civil Court judgments (CPLR 5018; see also David D. Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, CCA 302), or variation in preparation of an appellate record (CPLR 5525 [a]; CCA 1704).
A document to be included in the judgment-roll must be presented to the trial court and cannot be subsequently added to the record (Ayton v Bean, 92 AD2d 577, 578 [2d Dept 1983], appeal dismissed 60 NY2d 770 [1983] [judgment-roll can only be “correct(ed) or reform(ed) ... to indicate the true facts appearing before (the court) at the time of its original determination”]). Generally, explicit statutory preconditions to judgment are stringently enforced and any omission leads to an assailable judgment (see, respectively, R.D. Hursh, Mere Rendition, or Formal Entry or Docketing, of Judgment as Prerequisite to Issuance of Valid Execution Thereon, 65 ALR2d 1162, and, collecting cases in a parallel situation, H.D. Warren, Necessity That the Transcript of a Judgment of Another State Upon a Cognovit under Warrant of Attorney Shall Include the Cognovit and the Note Containing the Alleged Warrant of Attorney, 162 ALR 685).

. Where the credit card debt has been assigned, the affidavit must be sufficient to serve as the basis for advancing the business records of the original credit card issuer (see Palisades Collection, LLC v Gonzalez, 10 Misc 3d 1058CA], 2005 NY Slip Op 52015[U] [Civ Ct, NY County 2005, Gesmer, J.], as to such requirements), and establish that the assignee “has taken over the rights of an assignor” (Blum’s, Inc. v Ferro Union Corp., 36 AD2d 584, 585 [1st Dept 1971], affd 29 NY2d 689 [1971]). A limited number of New York companies purchase such debt (see Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib., 2 NY3d 249, 267 [2004 R.S. Smith, J., dissenting] [noting Department of Taxation and Finance advised the Court of Appeals that, in relation to assigned New York credit card debts, “there are no more than a few dozen assignees”]).

. The “notice of intention to arbitrate” referred to is the notice defined by CPLR 7503 (c): such notice must “specifyt ] the agreement pursuant to which arbitration is sought” and advise the opposing party, if opposing action is not taken within 20 days, such party “shall thereafter be precluded from objecting that a valid agreement was not made” or raising certain other objections (see Siegel, NY Prac § 593, at 1045 [describing strict application of provision]).
However, use of this procedure does not bar an argument that no arbitration commitment exists (Matter of Matarasso [Continental Cas. Co.], 56 NY2d 264, 267 [1982] [“this rule barring judicial intrusion into the arbitral process operates only when an agreement to arbitrate exists” and the procedure is inapplicable “where no agreement to arbitrate has ever been made”]), provided the party objecting did not participate in the arbitration (Matter of Commerce & Indus. Ins. Co. v Nester, 90 NY2d 255 [1997]).

. These provisions appear in many arbitration statutes. For example, relevant to states which adopted the 1956 Uniform Arbitration Act, reportedly modeled upon New York’s Civil Practice Act, the predecessor to the CPLR, that Uniform Arbitration Act also includes the same companion provisions (Uniform Arbitration Act § 1 [“A written agreement to submit any existing controversy to arbitration . . . (or) any controversy thereafter arising between the parties is valid”]; § 15 [a] [1] [“On entry of judgment or decree, the clerk shall prepare the judgment roll. . . (which shall include the) agreement”]).

. Service fails under the requirements of CPLR 7506 because the notice of the arbitration session was served by petitioner, rather than by the arbitrator, and the award was served only by first class mail. Other petitions to confirm credit card arbitration awards have raised serious questions regarding the address used for service, such as service of the award to a different address than that appearing in the records of the petitioner or to an otherwise available current address (Columbia Credit Card Servs, v Howard, Civ Ct, NY County, Index No. 1001 CVN 2006 [award mailed to Georgia while all other addresses in papers referenced New York address]; NCO Portfolio Mgt. v Burgos, Civ Ct, NY County, Index No. 45476 CVN 2005 [continued mailing to address from which mail was returned, notwithstanding that available electronic database contained a different address]).

. In the event of renewal, the notice of petition should not merely set forth the attorney’s address as a post office box (CPLR 2101 [d] [pleadings must identify the attorney by “name, address and telephone number”]; Citibank v Gillaizeau, 132 Misc 2d 928, 929 [Civ Ct, NY County 1986, Lehner, J] [street address “enable(s) personal service ... of motion papers . . . where a short notice period would be appropriate”]). Petitioner should also consider submitting an affidavit establishing that the respondent is not in active military service (Military Law § 303 [1]; § 306; 50 USC Appendix § 501 et seq.).