KNOLL, J.
| ,In this civil writ, we are called on to resolve a narrow question of law under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the “FAA”). Specifically, we address whether a party who does not file an action to vacate an arbitral award within three months thereby waives all affirmative defenses to a suit seeking confirmation of the award, including the defense that there is no valid arbitration agreement between the parties.
*711 Under the plain language of the FAA, a party seeking to confirm an arbitral award must provide the court with a copy of the arbitration agreement between the parties. Where, as here, the party seeking confirmation has failed to proffer sufficient admissible evidence to make a prima facie case that the parties entered a valid agreement to arbitrate, the court cannot confirm the award. The present judgment confirming the arbitral award is therefore reversed.
FACTUAL BACKGROUND AND PROCEDURAL HISTORY
William Weaver obtained a credit card from MBNA America Bank, N.A., the | ^alleged predecessor in interest of plaintiff FIA Card Services, N.A.[1] FIA alleges, as of 2007, Weaver’s account had an outstanding balance. On an unknown date, FIA notified Weaver of an arbitration claim against him with the National Arbitration Forum (“NAF”).[2] FIA filed a claim form, similar to a petition, requesting an award of $29,569.16 in unpaid credit card bills, $534.68 in interest, and $4,435.37 in attorney’s fees.
Weaver did not file a response or otherwise participate in the arbitral proceedings. On July 24, 2007, the arbitrator entered a written award in favor of FIA in the amount of $32,012.40. Notice of this award was served on Weaver by mail on July 25, 2007.
On November 5, 2007, FIA filed a petition to confirm the arbitration award in the 19th Judicial District Court, Hon. Kay Bates presiding. In support of its motion to confirm, FIA filed the following documents:
1) An unsigned, undated document titled “MBNA America Bank, N.A. Mast-ercard/Visa Credit Card Agreement,” which does not mention arbitration;
2) An unsigned document titled “Important Amendments to Your Credit Card Agreement,” dated 1999, which contains an arbitration clause;
3) An unsigned document titled “Credit Card Agreement Additional Terms and Conditions,” dated April 2001, which contains an arbitration clause;
|⅞4) A “Summary of Account Information,” dated February 23, 2007, showing a balance of $29,569.16 on Weaver’s account;
5) A copy of the NAF arbitration award in the amount of $32,012.40.
The record also contains three affidavits. One is signed by Jason Duff, a personal banking officer at FIA. The affidavit states he is familiar with plaintiffs credit account records, and Weaver’s account is overdue by $32,012.40, the same amount set forth in the NAF award.
Janelle Ehrenstrom, an attorney for the NAF, filed an affidavit authenticating the copy of the NAF award.
*712 Finally, Tammy Gibson, an employee of attorney Gregory Eaton, plaintiffs counsel of record, filed an affidavit averring that FIA “indicated” a balance of $32,012.40 on Weaver’s account.
Strikingly, there is no affidavit authenticating either the original Credit Card Agreement or either of the two addenda. There is also no affidavit demonstrating any of these documents has ever been sent to Weaver, or that he consented to their terms.
The district court held Weaver did not timely file a motion to vacate the award and thus waived any arguments for vacating, modifying or correcting the award. The court found it was the arbitrator’s duty to determine whether the arbitration agreement was valid and enforceable. The court believed the arbitrator’s decision on that issue was “final,” and MBNA’s motion to confirm was granted.
Weaver appealed. The First Circuit affirmed in a split decision, holding Weaver’s failure to timely file a motion to vacate precluded the district court from considering any objections to the arbitration. FIA Card Services, N.A. v. Weaver, 09-1464 (La.App. 1 Cir. 3/26/10), 36 So.3d 950. The court recognized its holding conflicted with decisions by the Second and Fifth Circuits, Chase Bank USA, N.A. v. Leggio, 43,751 (La.App. 2 Cir. 12/3/08), 999 So.2d 155, 158; Chase Bank USA, N.A. v. Leggio, 43,567 (La.App. 2 Cir. 11/19/08), 997 So.2d 887, 889; and NCO Portfolio Management Inc. v. Gougisha, 07-604 (La.App. 5th Cir.4/29/08), 985 So.2d 731, 734, unit denied, 08-1146 (La.9/26/08), 992 So.2d 986. We granted writs to resolve this split between the circuits.
DISCUSSION
I. Applicable Legal Standard
This case presents a question of law, and our review is de novo. Broussard v. Hilcorp Energy Co., 09-0449 (La.10/20/09), 24 So.3d 813, 816.
There is some confusion regarding whether FIA’s petition to confirm is brought under state or federal law. The district court based its ruling on the Louisiana Binding Arbitration Law, La.Rev. Stat. § 9:4201 et seq. However, the appellate court relied solely on federal law, and the parties’ briefs to this court focus on the FAA rather than state law. Louisiana courts have recognized the two acts are “almost identical in substance.” Woodson Construction Co., Inc. v. R.L. Abshire Construction Co., Inc., 459 So.2d 566, 569 n. 3 (La.App. 3 Cir.1984); Blount v. Smith Barney Shearson, Inc., 96-0207 (La.App. 4 Cir. 2/12/97), 695 So.2d 1001, 1003; accord, International River Center v. Johns-Manville Sales Corp., 02-3060 (La.12/3/03), 861 So.2d 139, 143 (the two acts are “very similar.”)
To the extent the two acts do conflict, any “inconsistency between the federal act and Louisiana law must be resolved in favor of the federal act as federal law preempts contrary state law.” Blount, 695 So.2d at 1003 (citing Southland Corp. v. Keating, 465 U.S. 1, 16, 104 S.Ct. 852, 860-61, 79 L.Ed.2d 1 (1984)). Therefore, we will apply the FAA.
II. Confirmation and Vacation of Ar-bitral Awards Under the FAA
| ¡/For an arbitral award to be made enforceable by law, it must first be confirmed by a court. The FAA provides a streamlined procedure for confirming awards, as set forth in 9 U.S.C. § 9:
If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time with *713 in one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.
The FAA also allows limited judicial review in the form of a motion to vacate, modify, or correct an award based on the following specifically enumerated statutory grounds:
(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
9 U.S.C. § 10; see also La.Rev.Stat. § 9:4210-4211.
Notably, “nonexistence of an arbitration agreement” is not one of the enumerated grounds for a motion to vacate under 9 U.S.C. § 10.
However, any “motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.” 9 U.S.C. § 12; see also La. Rev.Stat. § 9:4213. It is undisputed that lfiWeaver did not file a timely motion to vacate, modify, or correct the arbitral award within the three month period provided by statute.
FIA argues Weaver’s failure to move to vacate the award within the statutorily prescribed deadline means he has waived all defenses. In essence, if no motion to vacate, modify, or correct an arbitral award is filed within three months, a court is legally required to confirm the award as a purely ministerial act. We disagree. As explained below, the FAA requires a court faced with a petition to confirm to first ensure there is an arbitration agreement between the parties covering this dispute. This requirement is inherent in a petition to confirm and is independent of the statutory defenses which may be raised in a motion to vacate the award. Because FLA has failed to meet its evidentiary burden to show there has ever been a valid arbitration agreement between itself (or MBNA) and Weaver, its petition to confirm must be denied.
III. A Party Seeking Confirmation Must Produce The Arbitration Agreement
Our analysis begins, as always, with the plain text of the statute. Section 9 of the FAA begins by stating that a court shall confirm an arbitration award: “If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration.” 9 U.S.C. § 9. (Emphasis added). The plain language of 9 U.S.C. § 9 presupposes an agreement to arbitrate as a necessary condition for confirmation of an arbitral award. Therefore, before a court may enter judgment on a petition to confirm, it must answer the fundamental question: Was there an arbitration agreement between these parties?
FIA argues this question has already been answered by the arbitrator. The arbitral award states “[o]n or before *714 02/22/2007 the Parties entered into a written agreement to arbitrate their dispute.” The district court judge apparently believed the 17arbitrator’s finding was binding on the court: “[t]he arbitration agreement is valid, binding and enforceable because the debtor did not timely bring an attack on the arbitration agreement, and the arbitrator found the arbitration agreement to be binding and enforceable.”
However, both the U.S. Supreme Court and this court have held a challenge brought to the very existence of the contract containing the arbitration clause must be decided by the court, not by the arbitrator. Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 23, n. 27, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); International River Center v. Johns-Manville Sales Corp., 02-3060 (La.12/3/03), 861 So.2d 139, 143.
It is also noteworthy that, under the FAA, any “party moving for an order confirming ... an award shall, at the time such order is filed with the clerk for the entry of judgment thereon, also file the following papers with the clerk: (a) the agreement.” 9 U.S.C. § 13. The fact that the agreement must be filed with the court affirms it is the court’s duty to rule on this issue, and it is not left solely to the arbitrator’s discretion. If Congress meant for the arbitrator’s decision on this issue to be binding, there would be no need for the moving party to provide the court with a copy of the contract.
Although our analysis is based on the statutory language of the FAA, we have also reviewed the jurisprudence on this issue. This court is bound by the United States Supreme Court’s interpretation of federal statutes. We are not bound by the decisions of lower federal courts (or, for that matter, other state supreme courts). Shell Oil Co. v. Secretary, Revenue and Taxation, 96-0929 (La.11/25/96), 683 So.2d 1204, 1210 n. 11. Nonetheless, we review those opinions carefully to see if they provide further guidance for our analysis. Chittenden v. State Farm Mutual Auto. Ins. Co., 00-414 (La.5/15/01), 788 So.2d 1140, 1149 n. 21.
Weaver relies primarily on MCI Telecommunications Corp. v. Exalon Industries, Inc., 138 F.3d 426 (1st Cir.1998). MCI entered into a tariff regulation with the FCC which provided for arbitration of any dispute between MCI and anyone using its services as a provider of long-distance telecommunications. Id. at 427. Exalon and MCI signed a contract which apparently did not include an arbitration clause. When a dispute arose regarding MCI’s fees, MCI proceeded to arbitration. Exalon, not believing itself bound by the FCC tariff regulation, did not participate in the arbitration, and a sizable award was entered in MCI’s favor. Id. at 428.
MCI moved to confirm the award, and Exalon filed an opposition claiming there was no written agreement to arbitrate between the parties. The district court held, because Exalon did not file a motion to vacate within three months of entry of the award, it waived any objections. The First Circuit reversed, emphasizing that in arbitration the “need for an agreement, or more accurately, one that is in writing, as condition to gaining access to the umbrella provided by the FAA, manifests itself throughout the various provisions of this law.” Id. at 429. Therefore, “it is apparent that determining whether there is a written agreement to arbitrate the controversy in question is a first and crucial step in any enforcement proceeding before a district court .... if one of the parties alleges the inexistence of the contract, such a party is entitled to present evidence before the fact finder in support of this position.” Id. at 429 (emphasis added).
*715 The court went on to compare Exalon’s strategy to a collateral attack on a default judgment: “this situation is analogous to where a lawsuit proceeds against a non-appearing party over whom personal jurisdiction has not been acquired. That party can challenge the judgment when it is executed, for it lacks legal validity.” Id. at [i)430. Interestingly, the court suggested that, if Exalon had appeared before the arbitrator, it would have not been permitted to bring such a collateral attack. Id., citing Cullen v. Paine, Webber, Jackson & Curtis, Inc., 863 F.2d 851 (11th Cir.1989) and Professional Administrators Ltd. v. Kopper-Glo Fuel, Inc., 819 F.2d 639 (6th Cir.1987). The case was remanded for the district court to determine whether Exalon had ever entered into a written arbitration agreement. Id. at 431.[3]
Not all state courts have accepted MCI’s reasoning. Advantage Assets, Inc. II v. Howell, 190 N.C.App. 443, 663 S.E.2d 8 (2008) also involves an assignee of MBNA credit card debt. Plaintiff obtained a default arbitration award from the NAF. After the three month period had run, and no motion to vacate had been filed, plaintiff filed a motion to confirm. As proof of arbitration agreement, plaintiff submitted an unsigned “credit card agreement” dated April 2001.[4] The court held the defendant’s “response to plaintiffs motion to confirm — that there was no arbitration agreement — was simply not an appropriate response given the procedural posture of the case.” Id. at 447, 663 S.E.2d 8. The court believed defendant’s only legitimate means for attacking an arbitration agreement was to file a pre-arbitration motion under 9 U.S.C. § 4. Id. Under this interpretation, if a party fails to challenge the arbitration agreement prior to the arbitration proceedings, he is estopped from ever doing so.
|10We do not find the North Carolina court of appeal’s reasoning convincing. To begin with, we note the court does not adequately address the requirements for confirming an award under 9 U.S.C. § 9. That statute begins by emphasizing a court shall only confirm an arbitration award “If the parties in their agreement have agreed” to do so. Id. Highly significantly, the North Carolina court chose not to quote that language, instead beginning its quote with the second part of the statute. In ignoring this crucial phrase, the court assumed away the central issue— whether an arbitration award may be confirmed where the party seeking confirmation has failed to present evidence of an agreement between the parties.
We also note that Advantage Assets has not been followed or cited by any other state or federal court, and appears to be against the greater weight of authority, most of which supports MCI. In Bank of America, N.A. (USA) v. Dahlquist, 336 Mont. 50, 152 P.3d 718 (2007), the bank sued Dahlquist on an unpaid credit card debt. Dahlquist responded by filing a mo *716 tion to confirm an arbitration award he had obtained from the National Arbitration Council (“NAC”).[5] Bank of America failed to dispute the award within ninety days. Dahlquist moved to confirm the award and argued the bank had waived any defense, including any defense claiming that there was no arbitration agreement. Id. at 720. The Montana Supreme Court unanimously rejected this assertion. It noted that “[ujnder the FAA, where parties have not agreed to arbitrate | n... the arbitration award is invalid ab initio ... [the] FAA time limitation was thus not triggered, and [the bank] is not bound by the award, even though it failed to challenge it within three months.” Id. at 721; accord Citibank v. Wood, 177 Ohio App.3d 103, 894 N.E.2d 57 (2008) (citing Dahlquist and holding an award entered without an agreement to arbitrate before that arbitrator is “legal nullity” which may be challenged at any time.)
Similarly, in Yates v. CACV of Colorado, LLC, 303 Ga.App. 425, 693 S.E.2d 629 (2010), CACV, a successor in interest to MBNA, initiated arbitration proceedings with the NAF. An award was entered in favor of CACV and, after three months passed, it filed a motion to confirm. Yates filed a cross-claim under the Fair Debt Collection Practices Act and a motion to vacate the arbitral award. As proof of the agreement to arbitrate, CACV submitted an undated, unsigned, unauthenticated arbitration agreement. Id. at 634. The trial court confirmed the award, but the Court of Appeal reversed. The court noted, as an initial matter, whether an arbitration agreement exists is a question for the court, not the arbitrator, and “CACV bore the burden of proving the existence of such a valid and enforceable agreement.” Id. at 634 (citing Pickle v. Rayonier Forest Resources, 282 Ga.App. 295, 638 S.E.2d 344 (2006) and Life Care Centers of America v. Smith, 298 Ga.App. 739, 681 S.E.2d 182 (2009)). The court found, in no uncertain terms, CACV failed to meet that burden:
The record before us shows unequivocally that CACV failed to meet this burden. The only evidence of an arbitration agreement was an undated, unauthenticated photocopy of certain “additional” terms and conditions of an MBNA credit agreement that CACV attached to its amended petition to confirm the arbitration award. There was no evidence, however, showing that Yates’s contract with MBNA was governed by these provisions. Specifically, CACV did not submit a copy of any credit card application or agreement executed by Yates; nor did it submit an affidavit or other evidence showing the date Yates entered into a credit agreement with MBNA and that the photocopied terms and conditions represented the terms and conditions in effect for all MBNA credit agreements |12at that time. Alternatively, CACV failed to offer any evidence showing that the original credit agreement between Yates and MBNA had been properly amended, the date of such amendment, that the attached terms and conditions *717 reflected the amended agreement, that the amendments were sent to Yates, and that she accepted the same by continuing to use her MBNA credit card.
Id. at 635 (citations omitted).
Because the question of the existence of an arbitration clause is for the court, CACV could not simply rely on the arbitrator’s findings and bore the burden of presenting evidence from which a court could independently determine the existence of the agreement. Id. The court rejected CACV’s argument that Yates’ failure to move to vacate within three months waived the defense. The “assertion of this defense does not constitute a motion to vacate, modify or correct an award. Thus, it is not subject to the 90-day time limitation found in section 12 of the FAA. 9 USCA § 12. Rather, a claim that a contract dispute is not subject to arbitration constitutes an attack on the subject matter jurisdiction of the arbitrator,” and thus may be raised at any time. Id.
Several other state courts have likewise found, even if a defendant fails to timely move to vacate an arbitral award, he may raise the lack of an arbitration agreement as a defense to confirmation. See Danner v. MBNA America Bank, NA, 369 Ark. 435, 255 S.W.3d 863, 867 (2007) (The “time limits provided by section 12 ... do not prevent a party who did not participate in an arbitration proceeding from challenging the validity of the award at the time of its enforcement on the basis that no written agreement to arbitrate existed between the parties”); MBNA America Bank, NA v. Christianson, 377 S.C. 210, 659 S.E.2d 209, 212 (S.C.App.2008) (“MBNA could not rely on the debtor’s tardiness in challenging the award if the arbitrator never had jurisdiction to arbitrate and enter an award ... Before a circuit court confirms an arbitration award subject to the Federal Arbitration Act, there must be evidence of an arbitration | ^agreement”); MBNA America Bank, NA v. Credit, 281 Kan. 655, 132 P.3d 898, 900 (2006) (“MBNA cannot rely on Credit’s tardiness in challenging the award if the arbitrator never had jurisdiction to arbitrate and enter an award”); MBNA America Bank, NA v. Boata, 283 Conn. 381, 926 A.2d 1035, 1045 (2007) (“[A]t the very minimum, a trial court must determine whether there is an agreement to arbitrate before it confirms an award on the basis of that agreement. Thus, a challenge to the existence of an arbitration agreement is appropriate at any stage.”)
FIA cites several cases finding challenges to arbitration proceedings are waived if not raised within three months. However, many of these cases are distinguishable as they do not involve challenges to the underlying arbitrability of the dispute. See, e.g., Weldon v. Asset Acceptance, LLC, 896 N.E.2d 1181 (Ind.App. 2008) (Undisputed that the credit card agreement contained an arbitration clause, and the defendant had accepted those terms by use of the card); Comprehensive Accounting Corp. v. Rudell, 760 F.2d 138 (7th Cir.1985) (record contained a copy of a signed contract including an arbitration clause); Ottley v. Schwartzberg, 819 F.2d 373 (2d Cir.1987) (Undisputed that collective bargaining agreement provided for arbitration). Indeed, many of these cases seem to stand for the proposition that, where the defendant has established no grounds for vacating an award, the award must be confirmed.[6] While this is certain *718 ly the law, it does not apply where, as here, there are | ^grounds for not enforcing an award — specifically, lack of proof that an arbitration agreement exists.
IV. Whether An Arbitration Agreement Exists Between FIA and Weaver
Having disposed of the primary legal issue, we are left with an evidentiary issue — whether FIA has presented sufficient evidence for a court to find the existence of a binding agreement to arbitrate.
It is undisputed that the original agreement between Weaver and MBNA contains no arbitration clause. According to FIA, the arbitration clause was added later via two pamphlets giving notice of a change of terms in the agreement — one dated 1999, one dated April 2001. Weaver is not bound by the terms of the later-added arbitration clauses unless he consented to them, as a “substantive change in the terms of a contract requires the consent of parties.” Lanier v. Ateneo, 459 F.2d 689, 693 (5th Cir.1972); Isadore v. Washington Fire & Marine Ins. Co., 75 So.2d 247, 249 (La.App.Orl.1954); La. Civ. Code art. 1927.
At oral argument, FIA conceded Weaver never actually signed a contract containing an arbitration clause. However, it is black letter law that, if a credit card company sends a notice of change in terms of the agreement, the customer assents to the new terms by his continued use of the card. See NCO Portfolio Management, Inc. v. Walker, 08-1011 (La.App. 3 Cir. 2/4/09), 3 So.3d 628, 637 (citing Marsh v. First USA Bank, N.A., 103 F.Supp.2d 909 (N.D.Tex.2000)). In other words, if Weaver made even a single purchase after receiving notice of the updated terms, he is bound by the arbitration clause. FIA therefore had the burden of presenting admissible evidence that 1) the pamphlets containing the arbitration clause were mailed to MBNA’s customers, including Weaver, on a certain date, and 2) Weaver 115made at least one purchase after this date. FIA did not meet its burden.
The record contains a form credit card agreement and two pamphlets setting forth additional terms to credit card agreements. Neither the original agreement nor either of the purported addenda are authenticated by an accompanying affidavit or other evidence. This alone is fatal to FIA’s claim, as authentication is “a condition precedent to admissibility” which is satisfied by “evidence sufficient to support a finding that the [document] is what its proponent claims.” La. Evid.Code art. 901(a).
Even assuming the documents in the record are true copies of credit card notices printed by MBNA, there is no evidence showing when or if the notices were mailed to customers.[7] Nor has FIA shown *719 that, after receiving these notices, Weaver continued to use his credit card. The record is silent as to when Weaver opened his credit card account and when he used it. It may be that MBNA gave proper notice of the new terms and, upon receiving notice, Weaver continued using his card. However, this Court is constrained by the evidence in the record, and from this evidence we are unable to conclude that Weaver ever consented to resolve his credit card disputes via arbitration.
FIA counters that “defendant was given the opportunity to present evidence in 11fisupport of his allegation of the non existence of an agreement to arbitrate to the fact finder.” It is not defendant’s burden to prove the non-existence of an agreement; it is the burden of the party seeking to enforce a contract to show the contract exists. La. Civ.Code 1831. See also Kosmala v. Paul, 569 So.2d 158, 162 (La.App. 1 Cir.1990) (“The party seeking to enforce arbitration provisions has the burden of showing the existence of a valid contract to arbitrate.”) FIA did not meet this evidentiary burden.[8]
CONCLUSION
We therefore find a court cannot confirm an arbitration award unless the moving party has presented evidence sufficient to make a prima facie showing that there is an arbitration agreement between the parties. Because the record reflects FIA | |7has not done so, the judgment is hereby reversed and vacated.
We stress this decision is not designed to place an unfair burden on parties seek *720 ing to collect on valid debts, or to require parties to relitigate the merits of a claim which has already been rightfully decided by an arbitrator. But where, as here, there is no evidence the case was properly before the arbitrator pursuant to an arbitration agreement consented to by both parties, any arbitral proceedings were a nullity and cannot be enforced in a court of law.[9]
DECREE
For the foregoing reasons, the court of appeal’s judgment confirming the NAF ar-bitral award is reversed and vacated, and judgment on the petition to confirm is entered in favor of defendant William Weaver.
REVERSED AND RENDERED.
GUIDRY, J., dissents and assigns reasons.

. As far as we can tell, FIA has not presented any evidence that it is the legal assignee of Weaver's alleged debt to MBNA. It is therefore unclear, from the record, whether FIA is the proper party to bring this suit. See, e.g., R.L. Lucien Tile Co. v. American Security Ins. Co., 08-1190 (La.App. 4 Cir. 3/11/09), 8 So.3d 753, 757 ("absent a valid assignment of rights ... Lucien Tile has no standing to sue.”) As Weaver has not raised this argument, we do not address it.

. No evidence of the date or manner of the notification is in the record. However, Weaver’s answer admitted the portion of the petition alleging "[t]he arbitration proceedings were noticed.” This constitutes a binding judicial confession under La. Civ.Code art. 1853.

. FIA argues "MCI has been followed by selective state courts, [but] no other federal court has followed its reasoning.” This is not correct. Aside from courts in the First Circuit (which are bound to follow MCI as precedent), MCI has been followed by federal courts in Nevada and Florida. Chase Bank USA, N.A. v. Dispute Resolution Arbitration Group, 2006 U.S. Dist. LEXIS 43130, 2006 WL 1663823 (D.Nev.2006); Buczek v. Trans Union LLC, 2006 U.S. Dist. LEXIS 81982, 2006 WL 3666635 (S.D.Fla.2006). Perhaps FIA meant no other federal court of appeal has followed MCI. This is true, but it is also true that no other federal court of appeal has rejected MCI.

. Although it is impossible to know for certain, it seems likely this document is identical to the April 2001 “Credit Card Agreement Additional Terms and Conditions” pamphlet filed by FIA in this case.

. The NAC was a sham arbitration service run by a man who was disgruntled with the credit card industry. Debtors would send banks arbitration notices naming the NAC as arbitrator. The NAC would then send a pro forma arbitral award in the debtor’s favor. In at least some cases, when the company did not file to vacate the award within three months, debtors would move to confirm; effectively the opposite of what happened in the case currently before us.
A federal district court in Florida eventually issued an injunction against NAC to prevent it from issuing these unauthorized arbitral awards. Citibank, N.A. v. National Arbitration Council, Inc., 2006 U.S. Dist. LEXIS 67133, 2006 WL 2691528 (M.D.Fla.2006).

. See International Thunderbird Gaming Corp. v. United Mexican States, 473 F.Supp.2d 80 (D.D.C.2007) (No challenge to the arbitrator’s right to adjudicate the dispute, but moving to vacate because of the arbitrator’s misapplication of relevant law); Spine Surgery, Inc. v. Sands Brothers, Inc., 393 F.Supp.2d 1138 (W.D.Okla.2005) (same); Denver & Rio *718 Grande R.R. Co. v. Union Pacific R.R. Co., 868 F.Supp. 1244 (D.Kan. 1994) (same); Puerto Rico Maritime Shipping Authority v. Star Lines, Ltd., 496 F.Supp. 14 (S.D.N.Y.1979) (same); D.H. Blair & Co., Inc. v. Gottdiener, 462 P.3d 95 (2d Cir.2006) (Validity of arbitration clause not disputed); Taylor v. Nelson, 788 F.2d 220 (4th Cir.1986) (challenge to arbitrator's partiality).
None of these cases involves a challenge to the existence of the arbitration agreement, and none address the question of whether such a claim is waived if not brought within three months.

. There is no requirement that FIA prove Weaver, specifically, received the notice. It would be sufficient to provide evidence the notices were sent to all customers, including Weaver, on a certain date. See Nolan v. Mabray, 10-373 (La. 11/30/10), 51 So.3d 665 (Mailing was sufficiently proven by testimony that insurance company sent mailings automatically on a certain date, and there was no breakdown in the mailing system on that *719 date); Marsh v. First USA Bank, N.A., 103 F.Supp.2d 909, 918-19 (N.D.Tex.2000) (Credit card company employees testified that inserts including arbitration clause were placed in all members’ monthly invoices, and strict quality control measures ensured each invoice contained an insert); Susan Wiens and Roger Haydock, Arbitration: Before and After: Confirming Arbitration Awards: Taking the Mystery Out of a Summary Proceedings, 33 Wm. Mitchell L.Rev. 1293, 1304 (2007) (”[B]usiness records made in the ordinary course of business may support a statement that a party was provided with a written arbitration agreement that they accepted by their subsequent conduct.”)

. A review of the jurisprudence reveals this situation is not unique. We note several cases listed below where a bank, or its assign-ee, attempted to enforce an arbitral award via an unauthenticated copy of a generic form agreement and without providing admissible evidence the consumer actually consented to the agreement.
See MBNA America Bank, NA v. Wallace, 2007 Vt.Super. LEXIS 44 (Sup.Ct.Vt.2007) ("[MBNA] did subsequently attach a generic credit card agreement as an unauthenticated exhibit to a brief ... more notable, however, is absence of admissible evidence to show that Wallace ever received or consented to be bound by this agreement”); Cach, LLC v. Vis-cuso, 2009 N.Y. Slip Op. 32031U, 2009 WL 2920863 (Sup.Ct.N.Y.2009) ("As proof of a written agreement to arbitrate, petitioner submits only a photocopy of a general form of Credit Card Agreement ... [the] Agreement is undated and unsigned, and lacks specific reference to the respondent.... There is no affidavit or documentary evidence that the Credit Card Agreement was the actual agreement between the petitioner and respondent, or that respondent received actual or constructive notice of the terms and conditions of the Credit Card Agreement, including the arbitration section, and that respondent manifested an intent to be bound by such terms. Such intent may be shown by respondent’s use of the credit card after such notice, but petitioner submits no monthly credit card statements, or other proof demonstrating respondent's use of the card”); FIA Card Services v. Stonehill, 241 N.Y.L.J. 66 (Sup.Ct.N.Y. 2009) (same); MBNA America Bank, NA v. Straub, 12 Misc.3d 963, 815 N.Y.S.2d 450 (N.Y.Civ.Ct.2006); MBNA America Bank, NA v. Credit, 281 Kan. 655, 132 P.3d 898, 902 (2006) (collecting cases and noting "a national trend in which consumers are questioning MBNA and whether arbitration agreements exist [citations] Given MBNA’s casual approach to this litigation, we are not surprised that the trend may be growing.”)

. We note this decision is silent as to any issue of FIA's underlying claim.